IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

TRI-STATE ENERGY SOLUTIONS, LLP,    :
a Delaware Limited Liability Partnership,   :
    :
        Plaintiff,    :    Case No. 1:08-cv-209 (JJF)
    :
    v.    :
    :
KVAR ENERGY SAVINGS, INC.,    :
    :
        Defendant.    :

## ANSWERING BRIEF IN OPPOSITION OF DEFENDANT KVAR ENERGY SAVINGS, INC. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE ALTERNATIVE, MOTION TO TRANSFER THE ACTION TO THE MIDDLE DISTRICT OF FLORIDA

LEO JOHN RAMUNNO, ESQUIRE
BAR ID NO. 2003
1205 N. King Street
Wilmington, DE 19801
302-654-0660
Attorney for Plaintiff Tri-State Energy Solutions

## TABLE OF CONTENTS

PAGE

TABLE OF CITATIONS...................................................................ii

SUMMARY OF ARGUMENT....................................................1

NATURE AND STAGE OF PROCEEDINGS.............................................2,3

ARGUMENT

1.    Defendant KVAR is Subject to Personal Jurisdiction

under the Delaware Long Arm Statute, 10 Del.C. §3104................................4

A.    Gillen's Introduction to KVAR.........................................................4

B.    Gillen and Chieffo form Tri-State; Tri-State becomes a Distributor

of KVAR.................................................................................5

2.    Defendant KVAR request that the action be transferred to the

Middle District of Florida pursuant to 28 U.S.C. §1404(A) be denied................8

1.    The Convenience of the Parties.........................................................9

2.    Convenience of Witnesses/Ease of Access to Sources of Proof..................10

3.    Availability of Process to Compel Unavailing Witnesses/Cost of obtaining

presence of Witnesses.......................................................................10

4.    Public Interest..........................................................................11

CONCLUSION.................................................................................12

CERTIFICATE OF SERVICE................................................................13

DECLARATION OF LAWRENCE GILLEN.................................... Exhibit A

DECLARATION OF JOSEPH CHIEFFO........................................ Exhibit B

## TABLE OF CITATIONS

**PAGE**

*Accord. Cavu Releasing, LLC. Fries*, 419 F. Supp. 2d
388, 394 (S. D. N. Y. 2005)……………………………………………..…..9

*Brown v. Connecticut Gen. Life Ins. Co.,* 934 F.2d 1193, 1197
(11th Cir. 1991)……………………………………………………...…..8

*DelMonte Fresh Produce Co. v. Dole Food Co., Inc.* 136 F. Supp.2d 1271,
1281 (S.D. Fla. 2001)…………………………………………….…..8

DelMonte Fresh Produce, 136 F. Supp. 2d at 1282………………………….9

*H.B. Sherman Mfg. Co. v. Wayne Bird National Sales Corp.*, 979 F. Supp.
627, 630 (N.D. III 1997)……………………………………………10

Jewelmasters F. Supp. at 895……………………………………….…..9

*McRae v. J.D./M.D., Inc.* 511 So. 2d 540, 542 (Fla. 1987)…………………9

Miot F. Supp. at 1460………………………………………………..9

*S.C. Johnson & Son, Inc. v. Buzz Off Insect Shield* ………………………...10

*Vadusen v. Barrack*, 376 U.S. 612, 616, 84 S. Ct. 805, 809 (1964)……………8

## SUMMARY OF ARGUMENT

1.    Defendant KVAR is Subject to Personal Jurisdiction under the Delaware Long Arm Statute, 10 Del.C. §3104.


2.    Defendant KVAR request that the action be transferred to the Middle District of Florida pursuant to 28 U.S.C. §1404(A) be denied.

## NATURE AND STAGE OF PROCEEDINGS

The Plaintiff, Tri-State, filed this action in the Delaware Court of Chancery on or about November 19, 2007 requesting equitable relief as well as compensating damages. The action was not filed as a pre-empting lawsuit or to defame the defendant as alleged by Defendant in their opening brief without one piece of evidence. The Defendant relies on the allegation that Plaintiff waited four months to serve KVAR, which is simply not true. The action was started on November 19, 2007 and the praecipe for service were filed in January 2008. The only reason for any delay was that the undersign is in sole practice and is recovering from a heart attack and open heart surgery in September 2007 and gall bladder surgery in January 2008 and has only worked part-time for several months and has since not fully recovered. If Defendants' counsel had bothered to ask why there was any delay, they would have been told the same.

Defendant's knowing that the action was filed in Delaware Chancery Court filed an action on or about January 18, 2008 in the Middle District of Florida. What Defendant failed to state or mention in their opening brief is that a Motion to Dismiss for lack of personal jurisdiction is pending in Florida. If that action is granted, there would be no action in Florida and it would seem that Florida should rule on that Motion before this Court rules on Defendant's Motion to transfer this action to Florida. In addition, my review of 28 U.S.C. §1446 is that this Court after holding an evidentiary hearing to determine if justice requires removal of the case. Therefore, the Plaintiffs' would argue that this Court must first determine if justice requires removal after an evidentiary

2

hearing before it rules on the Motion to Dismiss.

The Defendant's are subject to personal jurisdiction in Delaware through Delaware's long arm statute that entered into a contract giving Plaintiff exclusive rights to sell KVAR products in Delaware and sold units in Delaware as already been briefed in Florida and from information and belief pending decision in Florida.

Wherefore, this Court must first rule that justice requires removal of the action and if it so rules after an evidentiary hearing. Also, this Court should consider the ruling made in Florida in regards to the Motion to Dismiss that is pending in Florida.

<u>**ARGUMENT**</u>

I.    <u>**KVAR is subject to In Personam Jurisdiction in this Court.**</u>

KVAR is clearly subject to Delaware Long Arm statute. As stated earlier, the
parties have a pending lawsuit in Florida Middle District Court and affidavits were filed
in that action and submitted to the Court. Tri-State Energy Solutions, LLP was formed by
Lawrence Gillen and Joseph Chieffo.

I.    <u>**FACTUAL BACKGROUND**</u>

A.    <u>**Gillen's Introduction to KVAR**</u>

The first contact between any of the parties in this case occurred in approximately
December 2005: Gillen learned of KVAR while browsing the internet at his home in
Delaware, searching for energy saving devices to use in wife's retail business located in
Middletown, Delaware. Gillen Decl. at ¶3. Delaware was de-regulating the electrical
industry and Gillen was searching for a product to help reduce energy consumption. *Id.*
Gillen contacted KVAR to inquire about purchasing a product for his wife's store. *Id.* at
¶4. KVAR informed Gillen that it did not have a distributor in Delaware, and did not
customarily sell its products on a retail basis to end-users. *Id.* KVAR also told Gillen that
it did not ordinarily deal with non-electricians, such as Gillen. *Id.* KVAR agreed to sell
Gillen two units for his wife's store, but required Gillen to sign a confidentiality and non-
disclosure agreement ("NDA"), which is attached to KVAR's Complaint as Exhibit "B."
*Id.* at ¶5. Gillen signed the NDA and paid for the products with his personal credit card.
*Id.*

4

Gillen signed the NDA in Delaware, in his individual capacity in connection with his single retail purchase of two KVAR units. *Id.* at ¶5. At the time of the purchase, Tri-State did not exist, and neither of the Chieffo Defendants had ever heard of KVAR. *Id.* at ¶6; *see* Chieffo Decl. at ¶3. Although the NDA contains a forum selection clause in Paragraph 9, Gillen and KVAR did not contemplate an ongoing business relationship at the time it was executed. Gillen Decl. ¶6. The two units were purchased in a single transaction utilizing Gillen's personal credit card. *Id.* at ¶5. There was no confidential data exchanged as a result of that single transaction, and it serves only as a peripheral basis of a remote claim asserted by KVAR. KVAR's complaint is silent on the disclosure of specific confidential information pursuant to the NDA.

**B.    Gillen and Chieffo form Tri-State; Tri-State becomes a Distributor of KVAR**

Several months after his retail purchase, Gillen contacted Gregory Taylor ("Taylor"), president of KVAR, to inquire about selling the KVAR products in Delaware, since KVAR did not have a Delaware distributor. *Id.* at ¶7, 8. Gillen saw a potential market for electrical control products in Delaware as a result of deregulation. *Id.* at ¶7. Taylor expressed concern because Gillen was not a trained electrician. *Id.* at ¶8. Gillen approached his friend Joseph Chieffo, an experienced electrical contractor, about starting a company to sell KVAR products in Delaware. *Id.* at ¶9. Gillen and Chieffo then formed Tri-State in March, 2006. *Id.*

5

With Chieffo on board, Gillen contacted Taylor and informed him that he had an experienced electrician willing to participate. *Id.* at ¶10. On March 16, 2006, Gillen and Chieffo, on behalf of Tri-State, traveled to meet with Taylor. *Id.* at ¶11. During the one day visit, on March 17, 2006, Tri-State and KVAR entered into an initial First Distributorship Agreement ("Initial Agreement"), which provided Tri-State with an exclusive distributorship of KVAR products in Delaware only on a one year term. *See Id.*

In May 2006, Taylor, made the first of several visits to Delaware to visit Tri-State. Id. at ¶13. While Taylor was in Delaware, the parties negotiated an expansion of Tri-State's sales territory, to include Maryland and Pennsylvania. *Id.* On May 3, 2006, KVAR and Tri-State entered into a new Regional Agreement ("Regional Agreement"). *Id.*

The Regional Agreement does not contain a forum selection clause. All negotiations leading to the Regional Agreement took place in Delaware during Taylor's personal visit to Tri-State. *Id.* at¶13. Paragraph 20 of the Regional Agreement also provides that it is the "entire agreement of the parties..., and there are no other promises or conditions in any other agreement [between them] whether oral or written."

Throughout the course of the parties' dealings, Delaware was the epicenter of their relationship. *Id.* at ¶14. Taylor routinely traveled to Delaware for service calls upon Tri-State, with Taylor traveling to Delaware approximately four times in 2006, including the visit during which the operative Regional Agreement was signed. *Id.* at ¶¶13, 16.

Defendants never maintained an office in Florida, nor did they conduct any business in Florida. *Id.* at ¶14; Chieffo Dec. at ¶¶2, 7. All of Tri-State's sales and all of

6

the activity which serves as the basis of Plaintiff's allegations took place in the Delaware region. *Id.* at ¶14. No aspect of Defendant's business activities were directed to Florida. Gillen Dec. at ¶14; Gillen Dec. at ¶¶2, 7. Tri-State did not direct payment to KVAR in Florida. *Id.* Rather, KVAR debited Tri-State's credit card account which it maintained on file. *Id.* KVAR merely manufactured and shipped product into Delaware, where Tri-State had the exclusive right to sell KVAR products.

Not only did KVAR contract to supply things in Delaware in contracted a distributorship agreement with Plaintiff for Delaware and travel to Delaware on several occasions. It is hard to understand how Defendants can assert that they did not transact any business in Delaware and are not subject to Delaware Long Arm Statute. Clearly KVAR has "extensive and continuing" contract with Delaware and Section 3104(c)(4) can provide a basis for jurisdiction over KVAR.

7

## ARGUMENT

**II.    KVAR request that this action be transferred to the United States District Court for Middle District of Florida should be denied.**

First and foremost, this Court has not determined that justice requires removal from the Delaware Court of Chancery. Secondly, the Defendant's have not answered the complaint and thirdly, there is a Motion to Dismiss pending in Florida and a similar request to transfer that action to Delaware District Court. Clearly the two decisions should be consistent and it is unknown at this time the outcome of that motion.

Transfer pursuant to 28 U.S.C. §1404(a) is within the discretion of the Court. *DelMonte Fresh Produce Co. v. Dole Food Co., Inc.* 136 F. Supp.2d 1271, 1281 (S.D. Fla. 2001) (citing *Brown v. Connecticut Gen. Life Ins. Co.,* 934 F.2d 1193, 1197 (11th Cir. 1991)). Transfer of venue is intended to "avoid unnecessary inconvenience to the litigants, witnesses and the public, and to conserve time, energy and money." *Id.* (citing *Vadusen v. Barrack*, 376 U.S. 612, 616, 84 S. Ct. 805, 809 (1964)). The burden of persuasion on the request to transfer is on the moving party.

Defendant alleges that "Tri-State and/or Gillen" are subject to personal jurisdiction in Florida by virtue of the forum selection provisions in the NDA attached to its Opening Brief as Exhibit "B." Because Gillen executed the NDA individually, before Tri-State was formed, Tri-State and the other Defendant's are unaffected by its terms.

The NDA fails to support personal jurisdiction over Gillen, individually. A contractual forum selection provision is insufficient to establish *in personam* jurisdiction, absent an independent basis for jurisdiction under the Florida long arm statute.

8

*See McRae v. J.D./M.D., Inc.* 511 So. 2d 540, 542 (Fla. 1987). In *McRae*, the Florida Supreme Court held that "a contractual choice of forum clause designating Florida as the forum cannot serve as the sole basis for asserting in personam jurisdiction over an objecting, nonresident defendant....[because] [c]onspicuously absent from the long arm statute is any provisions for submission to in personam jurisdiction merely by contractual agreement." *Id.* at 542, 543. The Court further "reject[ed] any suggestion that a defendant waives his due process right to contest the jurisdictional deficiency merely by signing a contract containing a permissive jurisdiction clause." *Id.*

In addition, as discussed earlier, the NDA was executed from an entirely different purpose the sale of two units to Lawrence Gillen to use in his wife's liquor store and before distribution contract were ever considered or signed.

The Court considers whether it is in the convenience of the parties, witnesses, and in the interest of justice to transfer the case. Factors which the Court considers in the analysis include: (1) convenience of the parties; (2) convenience of the witnesses; (3) relative ease of access to sources of proof; (4) availability of process to compel unwilling witnesses; (5) cost of obtaining the presence of witnesses; and (6) the public interest. DelMonte Fresh Produce, 136 F. Supp. 2d at 1282 (citing Jewelmasters F. Supp. at 895); Miot F. Supp. at 1460.

### 1.    The Convenience of the Parties.

The convenience of the parties weighs heavily in favor of litigating the instant case in Delaware. It is undisputed that Delaware and the surrounding area was the locale where all operative facts occurred. *Accord. Cavu Releasing, LLC. Fries*, 419 F. Supp. 2d

9

388, 394 (S. D. N. Y. 2005) (listing where "operative facts" occur as a primary consideration in a motion to transfer venue pursuant to §1404 (a)). In *S.C. Johnson & Son, Inc. v. Buzz Off Insect Shield,* the Court observed that in assessing whether to transfer intellectual property cases, courts "often focus on the activities of the alleged infringer, its employees, and its documents; therefore, the location of the infringer's place of business is often the critical and controlling consideration." (quoting *H.B. Sherman Mfg. Co. v. Wayne Bird National Sales Corp.*, 979 F. Supp. 627, 630 (N.D. III 1997)).

Here, all operative facts supporting KVAR's claims under the Lanham act would have occurred, it al all, in the Delaware area. The convenience of the parties is clearly enhanced by litigating this case in the forum where the alleged wrongdoing occurred.

### 2. Convenience of Witnesses/Ease of Access to Sources of Proof

It follows that since all activities occurred in the Delaware area, all documents, physical evidence, and witnesses would also be found here. All witnesses which are likely to support or refute KVAR's allegations are located in the Delaware area. The predominant claims contained in KVAR's complaint in Florida allege trademark violations in connection with re-sale and re-labeling of KVAR products. All of this activity occurred in the Delaware area, if at all, where the customers/witnesses are located. All documents, records and other physical evidence in connection with Defendants' alleged activities are located in the Delaware area.

### 3. Availability of Process to Compel Unavailing Witnesses/Cost of obtaining presence of Witnesses

The same process available in this Court to compel unwilling witnesses to testify

10

or appear is available in the District Court of Delaware. The cost of obtaining the presence of witnesses and would be considerable lower in that forum, given the location of the witnesses, evidence in this matter are within close proximity to Delaware. This factor weighs in favor of keeping the case in Delaware.

**4.    Public Interest**

Because the alleged facts all took place in Delaware and the surrounding area, Delaware has a much greater public interest in adjudicating the claims raised in this matter. If, as alleged in the Florida action that Defendants have engaged in Lanham Act violations, including false designation of original, false advertising, counterfeiting, and other misconduct, then those actions were carried out upon unwitting consumers in Delaware and the surrounding area. The District Court of Delaware has a strong interest in adjudicating the issues raised in Plaintiff's Complaint given that citizens within that jurisdiction are the consumers to which Defendant's alleged deception was targeted.

## CONCLUSION

For the foregoing reasons the Plaintiffs request this Honorable Court deny the Defendant's Motion to Dismiss and in the alternative deny the request to transfer this action to the Middle District of Florida.

**LEO JOHN RAMUNNO, ESQUIRE**
**BAR ID NO. 2003**
1205 N. King Street
Wilmington, DE 19801
302-654-0660
Attorney for Plaintiff Tri-State Energy Solutions

# EXHIBIT A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:08-CV-85-ORL-19KRS

KVAR ENERGY SAVINGS, INC. ,

       Plaintiff,

v.

TRI-STATE ENERGY SOLUTIONS,
LLP, a Delaware Limited Liability
Partnership;

CHIEFFO ELECTRIC, INC., a Delaware
Corporation;

LAWRENCE GILLEN, an individual;

and

JOSEPH J. CHIEFFO, an individual;

       Defendants.

_____

## <u>DECLARATION OF LAWRENCE GILLEN</u>

1.      I am over the age of eighteen years and make the statements herein based on personal knowledge.

2.      I am a Delaware resident, and serve as co-president of Tri-State Energy Solutions, LLP ("Tri-State"), a defendant in the above-captioned case.

3.      In December 2005, I learned of KVAR Energy Savings, Inc. ("KVAR"), plaintiff in the above-captioned case, while browsing the internet for energy saving devices to use in my wife's store in Middletown, Delaware. At the time, Delaware was de-regulating the electrical industry, and I anticipated increased electrical costs for my wife's business.

4.      I contacted KVAR to inquire about purchasing a product for my wife's store. KVAR informed me that it did not have a distributor in Delaware, and did not customarily sell its products on a retail basis to end-users. KVAR also told me that it did not ordinarily deal with non-electricians, such as me.

5.      KVAR agreed to sell me two units for my wife's store. However, because KVAR did not customarily sell its products to non-distributor, end-users, KVAR required that I execute a confidentiality and non-disclosure agreement ("NDA"). I signed the NDA in Delaware after KVAR faxed it to me. I paid for the two-units with my personal credit card. The NDA was executed exclusively in connection with that single, retail purchase by me of the KVAR units.

6.      Tri-State did not exist at the time I executed the NDA. I did not discuss any further purchases with KVAR leading up to and surrounding the execution of the NDA. At the time I purchased the two units for my wife's store, I did not contemplate a future business relationship with KVAR.

7.      After the two KVAR units were installed in my wife's store, I noticed a decrease in the electrical costs for the store. Since KVAR informed me that they did not have a Delaware distributor, I decided to contact KVAR to inquire about selling their products in Delaware.

8.      I was put in touch with Gregory Taylor, president of KVAR. Taylor expressed concern because I was not a trained electrician and I had no background in electrical contracting. Responding to Taylor's concern, I approached my friend, Joseph Chieffo, who has approximately twenty (20) years of experience as an electrical contractor.

9.      I discussed the idea of selling KVAR products with Chieffo and we agreed to form Tri-State for the purpose of distributing electrical products. In March, 2006, we initiated steps to form Tri-State for the purpose of pursuing a possible opportunity to distribute KVAR products in Delaware.

10.     I then contacted Taylor and informed him of Tri-State's creation, and of Chieffo's interest in selling and marketing  KVAR products in Delaware, as part of Tri-State. With Chieffo involved, Taylor agreed to discuss granting Tri-State the right to distribute KVAR products in Delaware.

11.     As co-presidents of Tri-State, Chieffo and I made our first and only trip to Florida on or about March 16, 2006 to discuss our business plan with Taylor. I have not returned to Florida since. During the two day trip, Tri-State and KVAR entered into an Initial Distributor Agreement ("Initial Agreement"). The Initial Agreement provided Tri-State with the exclusive right to distribute KVAR products in Delaware.

12.     After entering into the Initial Agreement, Tri-State began marketing and selling KVAR products in Delaware exclusively. Tri-State's marketing efforts were successful in generating interest, and Tri-State began selling a substantial volume of KVAR products.

13.     In May 2006, less than two months following the Initial Agreement, Taylor made his first of several visits to Delaware to observe and service Tri-State's operations. While Taylor was in Delaware,  Tri-State negotiated an expansion of Tri-State's exclusive distribution territory. KVAR agreed to extend Tri-State's exclusive territory into Maryland and Pennsylvania. On May 3, 2006, KVAR and Tri-State entered into a Regional Distributor Agreement ("Regional Agreement") under which KVAR

3

brings a claim in the above-captioned case.  The Regional Agreement, attached to the Complaint as Exhibit "A", was executed in Delaware, and was signed by Chieffo and myself, as co-presidents of Tri-State, and Taylor, as president of KVAR.  The Regional Agreement superseded and replaced the Initial Agreement, and to my knowledge is the only agreement between the parties to this case.

14.    Delaware was the center and exclusive focal point of Tri-State's business operations.  Tri-State did not market or sell any products in Florida.  At no time has either Tri-State or myself ever maintained an office in Florida or owned or leased real property in Florida.  All business conducted by Tri-State occurred in Delaware, Maryland, and Pennsylvania.

15.    KVAR did not exercise any managerial or operational control over Tri-State.  KVAR did not monitor or pre-approve any marketing conducted by Tri-State.  When Tri-State ordered product from KVAR, KVAR debited Tri-State's Delaware credit card, which was on file, without Tri-State having to ever send payments into Florida.

16.    When Tri-State required service, Taylor would travel to Delaware.  In 2006, Taylor traveled into Delaware approximately four times, including the visit during which the parties signed the Regional Agreement under which KVAR brings its claim.

I, LAWRENCE GILLEN, declare the foregoing to be true and correct in all respects.

/S/    3/28/08
LAWRENCE GILLEN

# EXHIBIT B

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:08-CV-85-ORL-19KRS

KVAR ENERGY SAVINGS, INC. ,

      Plaintiff,

v.

TRI-STATE ENERGY SOLUTIONS,
LLP, a Delaware Limited Liability
Partnership;

CHIEFFO ELECTRIC, INC., a Delaware
Corporation;

LAWRENCE GILLEN, an individual;

and

JOSEPH J. CHIEFFO, an individual;

      Defendants.

_____

### **DECLARATION OF JOSEPH CHIEFFO**

1.    I am over the age of eighteen years and make the statements herein based on personal knowledge.

2.    I am a Delaware resident, and serve as co-president of Tri-State Energy Solutions, LLP ("Tri-State"), a defendant in the above-captioned case. I am also president of Chieffo Electric, Inc., a defendant in the above-captioned case. Chieffo Electric, Inc. is a local, Delaware-based electrical contracting company which only does business in Delaware and the surrounding area. Chieffo Electric, Inc. did not sign any agreement which is part of this lawsuit, and had no business dealings with Plaintiff,

KVAR ENERGY SAVINGS, INC. ("KVAR").

3.      In or around March, 2006, Lawrence Gillen, a friend of mine, approached me with a proposal to distribute energy saving devices manufactured by KVAR Energy Savings, Inc. ("KVAR"). I have approximately twenty (20) years experience in electrical contracting. In March, 2006, we initiated steps to form Tri-State for the purpose of pursuing the possible opportunity to distribute KVAR products in Delaware. Chieffo Electric, Inc. does not have an interest in Tri-State, and does not hold any office in Tri-State. Neither I, nor Chieffo Electric, Inc., have ever done business in Florida, or with KVAR.

4.      As co-presidents of Tri-State, Gillen and I made our first and only trip to Florida to discuss our business plan with Taylor on or about March 16, 2006. I have not returned to Florida since. During the two day trip, Tri-State and KVAR entered into an Initial Distributor Agreement ("Initial Agreement"). The Initial Agreement provided Tri-State with the exclusive right to distribute KVAR products in Delaware.

5.      After entering into the Initial Agreement, Tri-State began marketing, selling, and servicing KVAR products in Delaware. Tri-State's marketing efforts were successful in generating interest, and Tri-State began selling a substantial volume of KVAR products.

6.      In May 2006, less than two months following the Initial Agreement, Taylor made his first of several visits to Delaware to observe and service Tri-State's operations. While Taylor was in Delaware,   Tri-State negotiated an expansion of Tri-State's exclusive distribution territory. KVAR agreed to extend Tri-State's exclusive territory into Maryland and Pennsylvania. On May 3, 2006, KVAR and Tri-State entered

into a Regional Distributor Agreement ("Regional Agreement") under which KVAR brings a claim in the above-captioned case. The Regional Agreement, attached to the Complaint as Exhibit "A", was executed in Delaware, and was signed by Gillen and myself, as co-presidents of Tri-State, and Taylor, as president of KVAR. The Regional Agreement superseded and replaced the Initial Agreement, and to my knowledge is the only agreement between the parties to this case.

7.      Delaware was the center and exclusive focal point of Tri-State's business operations. Tri-State did not market or sell any products in Florida. At no time has either Tri-State or myself ever maintained an office in Florida or owned or leased real property in Florida. All business conducted by Tri-State occurred in Delaware, Maryland, and Pennsylvania.

8.      KVAR did not exercise any managerial or operational control over Tri-State. KVAR did not monitor or pre-approve any marketing conducted by Tri-State. When Tri-State ordered product from KVAR, KVAR debited Tri-State's Delaware credit card, which was on file, without Tri-State having to ever send payments into Florida.

9.      When Tri-State required service, Taylor would travel to Delaware. In 2006, Taylor traveled into Delaware approximately four times, including the visit during which the parties signed the Regional Agreement under which KVAR brings its claim.

I, JOSEPH CHIEFFO, declare the foregoing to be true and correct in all respects.

/S/    3/28/08
JOSEPH CHIEFFO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TRI-STATE ENERGY SOLUTIONS, LLP,<br>a Delaware Limited Liability Partnership, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Case No. 1:08-cv-209 (JJF) |
| | : | |
| v. | : | |
| | : | |
| KVAR ENERGY SAVINGS, INC., | : | |
| | : | |
| Defendant. | : | |

### CERTIFICATE OF SERVICE

    **I, LEO JOHN RAMUNNO, ESQUIRE,** does hereby certify that on this
_28th_ day of April, 2008, I electronically filed the *Answering Brief in Opposition of Defendant KVAR Energy Savings, Inc. Motion to Dismiss for lack of Personal Jurisdiction, or in the Alternative, Motion to Transfer the Action to the Middle District of Florida* with the Clerk of the Court using CM/ECF and have mailed the documents by United States Postal Service to the following:

Daniel M. Silver, Esq.
A. Richard Winchester, Esq.
McCarter and English, LLP
405 N. King Street
Wilmington, DE 19801

 

**LEO JOHN RAMUNNO, ESQUIRE**
**BAR ID NO. 2003**
1205 N. King Street
Wilmington, DE 19801
302-654-0660
Attorney for Plaintiff Tri-State Energy Solutions