## IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | : | |
| TRI-STATE ENERGY SOLUTIONS, LLP a | : | Civil Action No. 1:08-cv-209 (JJF) |
| Delaware Limited Liability Partnership; | : | |
| | : | |
| Plaintiff, | : | **JURY TRIAL DEMANDED** |
| | : | |
| vs. | : | |
| | : | |
| KVAR ENERGY SAVINGS, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

### REPLY BRIEF IN SUPPORT OF
### DEFENDANT KVAR ENERGY SAVINGS, INC.'S MOTION TO DISMISS
### FOR LACK OF PERSONAL JURISDICTION, OR IN THE ALTERNATIVE,
### MOTION TO TRANSFER THIS ACTION TO THE MIDDLE DISTRICT OF FLORIDA

**McCarter & English, LLP**
A. Richard Winchester (#2641)
awinchester@mccarter.com
Daniel M. Silver (#4758)
dsilver@mccarter.com
Renaissance Centre
405 N. King Street
Wilmington, DE 19801
(302) 984-6300

**McCarter & English, LLP**
William J. Heller
wheller@mccarter.com
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

Date: May 8, 2008          *Attorneys for KVAR Energy Savings, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... ii

NATURE AND STAGE OF PROCEEDINGS ............................................................................... 1

ARGUMENT ................................................................................................................................... 2

      I.        KVAR IS NOT SUBJECT TO *IN PERSONAM* JURISDICTION IN
              THIS COURT ........................................................................................................ 2

      II.     ASSUMING *ARGUENDO* THAT THIS COURT FINDS KVAR SUBJECT
              TO *IN PERSONAM* JURISDICTION, KVAR REQUESTS THAT THIS
              ACTION BE TRANSFERRED TO THE UNITED STATES DISTRICT
              COURT FOR THE MIDDLE DISTRICT OF FLORIDA PURSUANT TO
              28 *U.S.C.* 1404(A) ................................................................................................ 5

CONCLUSION .............................................................................................................................. 10

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Baker Electronics, Inc. v. Pentar Systems, Inc.*,
219 F. Supp. 2d 1260 (M.D. Fla. 2002)........................................................................8

*Mancari v. AC & S Corp.*,
683 F. Supp. 91 (D. Del. 1988).................................................................................5

*MoneyGram  Payment Systems, Inc. v. Consorcio Oriental*,
65 Fed. Appx. 844 (3d Cir. 2003)..............................................................................8

*Nida Corp. v. Ken Nida*,
118 F. Supp. 2d 1223 (M.D. Fla. 2000)......................................................................8

*Rogal v. Skilstaf, Inc.*,
446 F. Supp. 2d 334 (E.D. Pa. 2006) .........................................................................8

*Schwarzkopf Tech. Corp. v. Ingersoll Cutting Tool Co.*,
820 F. Supp. 150 (D. Del. 1992).................................................................................7

## STATE CASES

*Chaplake Holdings, Ltd. v. Chrysler Corp.*,
Civ.A. No. 94C-04-164, 1995 WL 653510 (Del. Super. Aug. 11, 1995)....................4

*Ohrstrom v. Harris Trust Co. of New York*,
No. CIV. A. 15709, 1998 WL 8849 (Del. Ch. Jan. 8, 1998) ...................................3, 4

*Outokumpu Engineering Enterprises, Inc. v. Kvaerner EnviroPower, Inc.*,
685 A.2d 724 (Del. Super. 1996)................................................................................2

*Waters v. Deutz Corp.*,
479 A.2d 273 (Del. 1984) ..........................................................................................3

## FEDERAL STATUTES

*Fed. R. Civ. P. 12(b)* .................................................................................................5, 6

*28 U.S.C. § 1404(a)* ..................................................................................................5

## STATE STATUTES

*Del. C. § 3104(c)(4)* ................................................................................................2, 3, 5

*Fla. Stat. § 48.193(1)* ...................................................................................................8

ME1 7342422v.1

## NATURE AND STAGE OF PROCEEDINGS

Tri-State[1] filed this Action on November 19, 2007 in the Delaware Court of Chancery. KVAR did not receive service of process until March 18, 2008.  Tri-State's counsel granted KVAR an extension until April 11, 2008 to file a response to the Complaint.  On April 11, 2008, KVAR removed this Action to this Court, and filed a motion to dismiss for lack of personal jurisdiction, or in the alternative, a motion to transfer this action to the Middle District of Florida (the "Motion"), and an Opening Brief in support thereof.  On April 28, 2008, Tri-State filed its Answering Brief in Opposition of Defendant KVAR Energy Savings, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, or In the Alternative, Motion to Transfer this Action to the Middle District of Florida [D.I. 5] ("Answering Brief" or "AB").

Tri-State's Answering Brief, by failing to squarely address the issues raised in KVAR's Opening Brief, obfuscates the issues before the Court.  For example, rather than fully addressing the arguments regarding personal jurisdiction raised in KVAR's Opening Brief (as it should have), Tri-State argues that jurisdiction *over Tri-State* is not proper in Florida where a parallel action is pending -- an issue that has not been raised by KVAR in this Action and is therefore not properly before this Court.  Further, Tri-State's Answering Brief does not address the breadth of Third Circuit appellate and district court authority cited by KVAR in support of its motion to transfer, but instead cites Eleventh Circuit law on the issue which does nothing to aid this Court in reaching a decision on the merits of KVAR's Motion.

In an effort to assist this Court in reaching a decision on the merits of KVAR's Motion, KVAR respectfully submits this Reply Brief solely in response to the issues raised by Tri-State in its Answering Brief.

---

[1] All capitalized terms not defined herein have the same meaning as set forth in KVAR's Opening Brief in Support of Defendant KVAR Energy Savings, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, or In the Alternative, Motion to Transfer this Action to the Middle District of Florida [D.I. 4] ("Opening Brief" or "OB").

## ARGUMENT

### I.     KVAR IS NOT SUBJECT TO *IN PERSONAM* JURISDICTION IN THIS COURT

KVAR respectfully refers the Court to its Opening Brief for the entirety of its arguments regarding the lack of personal jurisdiction raised therein, as well as the applicable standards of review. KVAR hereby responds to the arguments raised by Tri-State in its Answering Brief. It does so without waiver of the many valid arguments raised in the Opening Brief but not addressed by Tri-State, and therefore apparently conceded by Tri-State.

It is Tri-State's burden to make a *prima facie* showing that KVAR is subject to personal jurisdiction under Section 3104. *See, e.g., Outokumpu Engineering Enterprises, Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 727 (Del. Super. 1996). Tri-State's jurisdictional argument focuses on 10 *Del. C.* § 3104(c)(4) -- in fact, that is the only sub-section relied upon by Tri-State -- which provides as follows:[2]

> (c) As to cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>
> > (4)     Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State[.]

10 *Del. C.* § 3104(c)(4).

As noted in the Opening Brief, Section 3104(c)(4) is a general jurisdiction provision. As such, Section 3104(c)(4) permits the Court to exercise jurisdiction when the defendant's contacts with the forum state are *unrelated* to the cause of action. OB at 16. Jurisdiction under Section 3104(c)(4) is established only when there has been tortious injury to the plaintiff *and* the

---

[2] Tri-State did not cite to any of the other subsections of the Delaware long arm statute, 10 *Del. C.*§ 3104(c), nor argue that any other subsection conferred jurisdiction over KVAR -- Tri-State apparently concedes there is no valid basis for personal jurisdiction under those other subsections.

nonresident defendant: (1) regularly does or solicits business in Delaware, (2) carries on some other continuous course of activity in Delaware, or (3) derives substantial revenue from goods used or consumed or from services rendered in Delaware. *Waters v. Deutz Corp.*, 479 A.2d 273, 275 (Del. 1984); *see also* OB at 16. Accordingly, to confer personal jurisdiction over KVAR under Section 3104(c)(4), Tri-State must demonstrate that one of the three enumerated jurisdictional "hooks" are met here. They are not.

KVAR does not regularly do business in Delaware nor carry on any other consistent course of activity in Delaware. KVAR has no office in Delaware, and no personnel located in Delaware. Taylor Dec. ¶ 2 [D.I. 3]. KVAR makes much of Tri-State's sale of products to a Delaware entity. AB at 7. Merely selling products to a Delaware entity, however, does not satisfy the "doing business in Delaware" requirement under 3104(c)(4); rather, "[u]nder Delaware law, in order to be found to engage in a persistent course of conduct, the nonresident must have a 'presence' in Delaware." *See Ohrstrom v. Harris Trust Co. of New York*, 1998 WL 8849, at *4 (Del. Ch. Jan. 8, 1998).

In *Harris Trust*, Chancellor Chandler discussed the *Finkbiner v. Mullins* decision in which the Superior Court found that a non-Delaware car dealer which sold **hundreds** of cars to Delaware car dealers "did not have a presence in Delaware sufficient to establish a persistent course of conduct in Delaware." *Harris Trust*, 1998 WL 8849, at *4 (*citing Finkbiner v. Mullins*, 532 A.2d 609, 620 (Del. Super. 1987)). The decisions in *Harris Trust and Finkbiner* turned on the fact that "all of the elements of the sale took place" outside of Delaware. *Harris Trust*, 1998 WL 8849, at *4 (*citing Finkbiner*). Here as well, the elements of KVAR's sales to Tri-State all occurred outside of Delaware, as payment was made in Florida and title and possession changed hands in Florida (OB at 13). Such uncontradicted facts do not support -- but

rather refute -- a finding of general jurisdiction under the Delaware long arm statute.  *See Harris Trust*, 1998 WL 8849, at *4 (*citing Finkbiner*).  Nor can it be said that Tri-State was KVAR's agent in Delaware, as the Distributor Agreement between the two parties expressly provides otherwise.  OB at 6 (*citing* Exhibit C ¶ 14).

Tri-State also relies heavily on KVAR representative Gregory Taylor's alleged four trips to Delaware to meet with Tri-State representatives.  Giving Tri-State's assertion of four alleged trips the benefit of the doubt, these casual and isolated contacts with Delaware are in no way sufficient to rise to the level of a "presence" in Delaware.  "It is generally recognized that 'the casual presence of the corporate agent or even his conduct of single or isolated items [or] activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action *unconnected* with the activities there.'"  *Chaplake Holdings, Ltd. v. Chrysler Corp*., 1995 WL 653510, at *5 (Del. Super. Aug. 11, 1995) (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (emphasis original).  Rather, in order to be consistent with due process, a "defendant's activity in the forum must be continuous and substantial."  *Chaplake*, 1995 WL 653510, at *5 (citations omitted).

Tellingly, Tri-State's argument that KVAR is subject to personal jurisdiction in Delaware contains the statement of facts from Tri-State's motion to dismiss in the Florida Action, and a total of two (2) new paragraphs, both of which are conclusory and have no legal "argument" or supporting authority.  *Compare* AB at 4-7 *with* Tri-State Partners' Motion to Dismiss filed in the Florida Action [D.I. 22] at 2-6, a copy of which is attached hereto as Exhibit A.  Tri-State's failure to meaningfully respond to KVAR's specific arguments on the issue of jurisdiction constitutes a tacit admission of Tri-State's *inability* to meaningfully respond.

4

Based on the foregoing, Tri-State has utterly and completely failed to meet its burden of making a *prima facie* showing that KVAR regularly does business in Delaware or carries on any other consistent course of activity in Delaware. The objective facts actually belie that conclusion. Further, Tri-State has not alleged any facts which show that KVAR derives substantial revenue from goods or services rendered in Delaware. Tri-State's failure to allege facts which make a *prima facie* showing under Section 3104(c)(4), combined with Tri-State's concession that the other subsections of 3104(c) are inapplicable, entitles KVAR to a dismissal for lack of personal jurisdiction.

II.    **ASSUMING *ARGUENDO* THAT THIS COURT FINDS KVAR SUBJECT TO *IN PERSONAM* JURISDICTION, KVAR REQUESTS THAT THIS ACTION BE TRANSFERRED TO THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA PURSUANT TO 28 *U.S.C. §* 1404(A)**

KVAR respectfully refers the Court to its Opening Brief for the entirety of the arguments regarding the appropriateness of a transfer to the Middle District of Florida raised therein, as well as the applicable standards of review. KVAR hereby responds to the arguments raised by Tri-State in its Answering Brief. It does so without waiver of the many valid arguments raised in the Opening Brief but not addressed by Tri-State and therefore apparently conceded by Tri-State.

Taking Tri-State's points in turn, there can be no doubt that this case was properly removed from the Delaware Court of Chancery to this Court. The statutory prerequisites for removal were met, as outlined in the Notice of Removal [D.I. 1], and KVAR is entitled to remove this action -- as a matter of right -- unless it can be shown to have waived that right. *See Mancari v. AC & S Corp.*, 683 F.Supp. 91, 93-94 (D. Del. 1988) (noting defendant's right to remove a case is "absolute"). KVAR has not waived that right.

Next, KVAR is not required to answer the Complaint; upon filing a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b), a defendant is relieved from filing an answer

to the Complaint.  *See F.R.C.P.* 12(b) (stating "[a] motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed").  Finally, there is no requirement that this Court wait until the Florida Court decides the motions pending in that Court before ruling on KVAR's Motion, and in fact, with the filing of this Reply Brief, the briefing on KVAR's motion in this action is complete; the Court is now free to set a date for oral argument or rule on the papers.  Briefing on the motions pending in the Florida Action will not be complete until at least May 30, 2008.

The remainder of Tri-State's points on the topic of transfer are not persuasive.  Tri-State made no effort to squarely address the arguments made by KVAR, and instead, chose to once again "cut and paste" portions of its filing in the Florida Action into its arguments, complete with case law from the Eleventh Circuit (and none from this District or the Third Circuit).

Tri-State fails to address that its principals, Gillen *and* Chieffo, both executed the NDA, and that copies of each executed NDA were attached as Exhibit B to KVAR's Opening Brief. OB at 5.  This undercuts entirely Tri-State's misguided attempt to avoid the application of the forum selection clause by arguing "the NDA was executed from [sic] an entirely differing purpose the sale of two units to Lawrence Gillen" (AB at 9), because Chieffo had no accompanying personal purchase.  While Gillen may have executed the NDA earlier in time, he remained bound by it throughout the course of dealings between the parties.[3]  Moreover, it is inconceivable that NDAs were signed solely for casual purchases at retail.  These NDAs were pursuant to a more extensive business relationship than the Tri-State parties would have this Court believe.

---

[3] As noted in the Opening Brief, there can be no doubt that Tri-State is bound by the forum selection clause contained in the NDA; as all of the principals of Tri-State are bound by the forum selection clause, it would belie logic and reason to allow Gillen and Chieffo to escape the application of the forum selection clause when acting through an entity within their sole control, perhaps even an alter ego of Gillen and/or Chieffo.  OB at 19 n. 6.

Rather than addressing the legal impact of the valid and binding forum selection clause contained in the NDA, Tri-State instead argues that "Tri-State and the other Defendant's [sic] are unaffected by its terms." This is incorrect. First, both Tri-State principals, Chieffo and Gillen, signed the NDA. Second, as discussed at length in the Opening Brief, even if Tri-State's allegations against KVAR do not invoke the forum selection clause contained in the NDA, it is enough that the forum selection clause is implicated by KVAR's claims and/or defenses against Tri-State. *See* OB at 19-20 (*citing Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1075 (3d Cir. 1997)). Rather than addressing this point, Tri-State elects to obscure the issues at hand by arguing that Tri-State and the Tri-State Partners are not subject to personal jurisdiction in Florida -- an issue of no relevance to KVAR's motion to transfer.

Whether or not Tri-State is subject to personal jurisdiction in the Florida Action is unrelated to this Court's ability to rule on KVAR's motion to transfer. The consideration upon a motion to transfer is not whether the plaintiff would be subject to personal jurisdiction in the transferee jurisdiction as a defendant, but rather whether the action could have been properly brought by the plaintiff in the transferee jurisdiction. *See Schwarzkopf Tech. Corp. v. Ingersoll Cutting Tool Co.*, 820 F.Supp. 150, 151 (D. Del. 1992) (stating "[a]s a threshold issue, the Court must determine if the action 'might have been brought' in the transferee district."). Where, as here, Tri-State could have brought, and should have brought, this action in the Middle District of Florida, the Court's analysis on the "threshold issue" ends there. This Court need not consider Tri-State's argument that it is not subject to personal jurisdiction in Florida, as the Middle District of Florida will be addressing that issue. In addition, of the four parties sued in Florida (Tri-State and the three Tri-State Partners), the transferee jurisdiction, certainly Tri-State, as a result of its continuous dealings with KVAR in Florida, will be subject to jurisdiction there.

7

When the Middle District of Florida addresses Tri-State's claim that it is not subject to personal jurisdiction in Florida, KVAR is confident that the Court will conclude jurisdiction exits. Pursuant to Fla. Stat. § 48.193(1)(a), Florida courts have jurisdiction over a person or entity when that person or entity either operates, conducts, engages in, or carries on a business or business venture in this state. While the activities of a given defendant must be "considered collectively and show a general course of business activity in the state for pecuniary benefit," *see Baker Electronics, Inc. v. Pentar Systems, Inc.*, 219 F. Supp.2d 1260, 1263 (M.D. Fla. 2002) (*citing Suffolk Federal Credit Union v. Continental Ins. Co.*, 664 So.2d 1153, 1154 (Fla. 3d DCA 1995)), the formation of a business relationship in Florida is enough to confer jurisdiction over a foreign defendant under the Florida long arm statute. *See Baker Electronics, Inc*, 219 F. Supp.2d at 1263. Under Florida law, the activities of Gillen and Chieffo on behalf of Tri-State are sufficient to establish personal jurisdiction over Tri-State. Further, Tri-State's trademark infringement gives rise to a tortious injury in Florida, which is itself enough to confer jurisdiction over Tri-State in Florida. *See generally Nida Corp. v. Ken Nida*, 118 F. Supp.2d 1223, 1231 (M.D. Fla. 2000).

Finally, with regard to Tri-State's analysis of the factors a Court considers in deciding whether to a transfer a case, KVAR does not believe it appropriate to apply the law of the Eleventh Circuit to a motion to transfer pending in this Court. KVAR therefore does not address those misplaced arguments herein, but instead respectfully re-asserts the points and authorities raised in the Opening Brief. Importantly, in the Third Circuit, "[f]orum selection clauses are presumptively valid and thus entitled to great and controlling weight in all but the most exceptional case." *Rogal v. Skilstaf, Inc.*, 446 F.Supp.2d 334, 337 (E.D. Pa. 2006) (*citing Wall Street Aubrey Golf, LLC v. Aubrey*, 2006 WL 1525515, at *1 (3d Cir. June 5, 2006); *MoneyGram*

8

*Payment Systems, Inc. v. Consorcio Oriental, S.A.*, 65 Fed. Appx. 844, 847-848 (3d Cir. May 21, 2003)).  And as is the case here, where a forum selection clause is implicated in the dispute, whether initially or in the context of counter-claims or defenses, the forum selection clause applies to the dispute.  OB at 19-20.  Therefore, assuming *arguendo* that this Court has jurisdiction over KVAR, transfer of this Action to the Middle District of Florida is appropriate.

9

## CONCLUSION

For the reasons set forth in KVAR's Opening Brief as well as herein, KVAR respectfully requests the Court dismiss this action for lack of personal jurisdiction over KVAR, or in the alternative, transfer this action to the Middle District of Florida.

**McCarter & English, LLP**

/s/ Daniel M. Silver
A. Richard Winchester (#2641)
awinchester@mccarter.com
Daniel M. Silver (#4758)
dsilver@mccarter.com
Renaissance Centre
405 N. King Street
Wilmington, DE 19801
(302) 984-6300

**McCarter & English, LLP**
William J. Heller
wheller@mccarter.com
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444
*Attorneys for KVAR Energy Savings, Inc.*

Dated:  May 8, 2008

# EXHIBIT A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:08-CV-85-ORL-19KRS

KVAR ENERGY SAVINGS, INC.,

       Plaintiff,

v.

TRI-STATE ENERGY SOLUTIONS,
LLP, a Delaware Limited Liability
Partnership;

CHIEFFO ELECTRIC, INC., a Delaware
Corporation;

LAWRENCE GILLEN, an individual;

and

JOSEPH J. CHIEFFO, an individual;

       Defendants.

---

## DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND ALTERNATIVE MOTION TO TRANSFER VENUE

Defendants, TRI-STATE ENERGY SOLUTIONS, LLP, CHIEFFO ELECTRIC, INC., LAWRENCE GILLEN, and JOSEPH CHIEFFO, file their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, and alternative motion to transfer venue, and submit their Memorandum of Law in support as follows:[1]

## I.    INTRODUCTION

Defendants seek dismissal of Plaintiff's Complaint based on lack of personal jurisdiction, or alternatively seek transfer of venue to the District Court of Delaware.

---

[1] Simultaneously herewith, Defendants have submitted Notice of Filing the Declarations of Lawrence Gillen and Joseph Chieffo.

Plaintiff KVAR ENERGY SAVINGS, INC. ("KVAR") is a Florida corporation which produces products intended to improve energy efficiency in residential and commercial buildings. *See* Complaint at ¶¶ 1, 21. Defendants are all Delaware residents. Declaration of Lawrence Gillen ("Gillen Decl.*")* at ¶2; Declaration of Joseph Chieffo ("Chieffo Decl.") at ¶2. TRI-STATE ENERGY SOLUTIONS, LLP ("Tri-State") is a former distributor of KVAR's products in the Delaware area. The distributorship agreement which is at issue in this case was signed in Delaware by Tri-State and KVAR, and required Tri-State's exclusive performance in Delaware. Gillen Decl. at ¶13. Defendants LAWRENCE GILLEN ("Gillen") and JOSEPH CHIEFFO ("Chieffo") are the co-presidents of Tri-State, and do not engage in business, nor maintain any connection to Florida. Gillen Decl. at ¶¶2, 14; Chieffo Decl. at ¶¶2, 7. Defendant CHIEFFO ELECTRIC, INC. ("Chieffo Electric") is a Delaware company but has never done business with KVAR, and is not a party to any agreement with KVAR. Chieffo Decl. at ¶2.

KVAR's Complaint alleges claims against all Defendants generically under the Lanham Act (alleging infringement of purported trademark rights) and for breach of a distribution agreement among various state law claims. All alleged wrongdoing attributed to Defendants by KVAR purportedly took place in the Delaware region. Accordingly, this Court lacks personal jurisdiction over Defendants. Alternatively, the matter should be transferred to the District Court of Delaware, pursuant to 28 U.S.C. § 1404.

## II.    FACTUAL BACKGROUND

### A.    Gillen's Introduction to KVAR

The first contact between any of the parties in this case occurred in approximately December 2005: Gillen learned of KVAR while browsing the internet at his home in Delaware, searching for energy saving devices to use in his wife's retail business located in Middletown, Delaware. Gillen Decl. at ¶3. Delaware was de-regulating the electrical industry and Gillen was searching for a product to help reduce energy consumption. *Id.* Gillen contacted KVAR to inquire about purchasing a product for his wife's store. *Id.* at ¶4. KVAR informed Gillen that it did not have a distributor in Delaware, and did not customarily sell its products on a retail basis to end-users. *Id.* KVAR also told Gillen that it did not ordinarily deal with non-electricians, such as Gillen. *Id.* KVAR agreed to sell Gillen two units for his wife's store, but required Gillen to sign a confidentiality and non-disclosure agreement ("NDA"), which is attached to KVAR's Complaint as Exhibit "B." *Id.* at ¶5. Gillen signed the NDA and paid for the products with his personal credit card. *Id.*

Gillen signed the NDA in Delaware, in his individual capacity in connection with his single retail purchase of two KVAR units. *Id.* at ¶5. At the time of the purchase, Tri-State did not exist, and neither of the Chieffo Defendants had ever heard of KVAR. *Id.* at ¶6; *see* Chieffo Decl. at ¶3. Although the NDA contains a forum selection clause in Paragraph 9, Gillen and KVAR did not contemplate an ongoing business relationship at the time it was executed. Gillen Decl. ¶6. The two units were purchased in a single transaction utilizing Gillen's personal credit card. *Id.* at ¶5. There was no confidential data exchanged as a result of that single transaction, and it serves only as a peripheral basis of a remote claim asserted by KVAR. KVAR's complaint is silent on the disclosure of specific confidential information pursuant to the NDA. KVAR attempts to shoehorn

LAW OFFICES
BECKER & POLIAKOFF, P.A. • 3111 STIRLING ROAD • FORT LAUDERDALE, FL 33312-6525
TELEPHONE (954) 987-7550

all Defendants into this case by virtue of the NDA, which was only signed by Gillen, as part of a one-off transaction through the internet, completely unrelated to the balance of claims asserted by KVAR.

**B.     Gillen And Chieffo Form Tri-State; Tri-State Becomes A Distributor Of KVAR**

Several months after his retail purchase, Gillen contacted Gregory Taylor ("Taylor"), president of KVAR, to inquire about selling the KVAR products in Delaware, since KVAR did not have a Delaware distributor. *Id.* at ¶7,8.  Gillen saw a potential market for electrical control products in Delaware as a result of deregulation. *Id.* at ¶7. Taylor expressed concern because Gillen was not a trained electrician. *Id.* at ¶8.  Gillen approached his friend Joseph Chieffo, an experienced electrical contractor, about starting a company to sell KVAR products in Delaware. *Id.* at ¶9.  Gillen and Chieffo then formed Tri-State in March, 2006. *Id.*

With Chieffo on board, Gillen contacted Taylor and informed him that he had an experienced electrician willing to participate. *Id.* at ¶10.  On March 16, 2006, Gillen and Chieffo, on behalf of Tri-State, traveled to meet with Taylor. *Id.* at ¶11.  During the one day visit, on March 17, 2006, Tri-State and KVAR entered into an initial First Distributorship Agreement ("Initial Agreement"), which provided Tri-State with an exclusive distributorship of KVAR products in Delaware only on a one year term. *See Id.*

The Initial Agreement is not a part of KVAR's Complaint.  KVAR did not attach it, nor does it allege that Tri-State breached the Initial Agreement.  The Initial Agreement was superseded by a later agreement signed on May 3, 2006, under which KVAR does assert a claim in Count VI.

4

In May 2006, Taylor, made the first of several visits to Delaware to visit Tri-State. *Id.* at ¶13. While Taylor was in Delaware, the parties negotiated an expansion of Tri-State's sales territory, to include Maryland and Pennsylvania. *Id.* On May 3, 2006, KVAR and Tri-State entered into a new Regional Agreement ("Regional Agreement"). *Id.*

KVAR alleges a breach of the Regional Agreement in Count VI of its Complaint.[2] The Regional Agreement does not contain a forum selection clause. All negotiations leading to the Regional Agreement took place in Delaware during Taylor's personal visit to Tri-State. *Id.* at ¶13. Paragraph 20 of the Regional Agreement also provides that it is the "entire agreement of the parties . . . , and there are no other promises or conditions in any other agreement [between them] whether oral or written."

Throughout the course of the parties' dealings, Delaware was the epicenter of their relationship. *Id.* at ¶14. Taylor routinely traveled to Delaware for service calls upon Tri-State, with Taylor traveling to Delaware approximately four times in 2006, including the visit during which the operative Regional Agreement was signed. *Id.* at ¶¶13, 16.

Defendants never maintained an office in Florida, nor did they conduct any business in Florida. *Id.* at ¶14; Chieffo Dec. at ¶¶ 2, 7. All of Tri-State's sales, and all of the activity which serves as the basis of Plaintiff's allegations took place in the Delaware region. *Id.* at ¶14. No aspect of Defendants' business activities were directed to Florida. Gillen Dec. at ¶ 14; Gillen Dec. at ¶¶ 2, 7. Tri-State did not direct payment to KVAR in Florida. *Id.* Rather, KVAR debited Tri-State's credit card account which it maintained

---

[2] Prior to the initiation of this case, Tri-State sued KVAR for breach of a Regional Agreement in the court of chancery of the State of Delaware, styled *Tri-State Energy Solutions, LLC v. KVAR Energy Savings, Inc.*, Civil Action No.: 3361-VCP.

LAW OFFICES
BECKER & POLIAKOFF, P.A. • 3111 STIRLING ROAD • FORT LAUDERDALE, FL 33312-6525
TELEPHONE (954) 987-7550

on file. *Id.* KVAR merely manufactured and shipped product into Delaware, where Tri-State had the exclusive right to sell KVAR products.

### C. Insufficient, Vague and Indefinite Allegations Against Chieffo, Chieffo Electric And Gillen

KVAR fails to allege individual wrongdoing attributable to Chieffo, Chieffo Electric or Gillen, individually. The Regional Agreement is between KVAR and Tri-State. Instead of attributing any alleged wrongdoing to these three Defendants, KVAR's Complaint merely lumps them together with Tri-State to create the impression that all Defendants had individual business dealings with KVAR, or alternatively, that each Defendant engaged in separate wrongdoing. Rampant throughout KVAR's Complaint are allegations couched in the term "and/or". *See* Complaint at ¶¶ 10, 15, 19, 20, 31, and 40. Use of "and/or" renders the allegations contained in KVAR's Complaint vague and imprecise. This point is underscored in paragraphs 44 through 64 of the Complaint, where KVAR groups all Defendants together and in so doing fails to attribute any particular wrongdoing to any specific Defendant.[3]

### MEMORANDUM OF LAW

### III. STANDARD OF REVIEW

KVAR alleges subject matter jurisdiction before this Court based on federal questions asserted under the Lanham Act 15 U.S.C. §1501 et seq., and upon diversity of citizenship. Because the Lanham Act is silent with respect to obtaining personal

---

[3] Because of page limitations, Defendants are not including a separate motion for more definite statement pursuant to Rule 12(e). Nonetheless, the lack of precision which characterizes Plaintiff's Complaint merits a more definite statement, in the event that the Court finds personal jurisdiction against Defendants and denies Defendant's request to transfer set forth below. As a result, KVAR's Complaint fails to state a claim against Chieffo, Chieffo Electric, and Gillen, and at a minimum is so vague and imprecise that a focused and well-informed response to the allegations cannot be made.

LAW OFFICES
BECKER & POLIAKOFF, P.A. • 3111 STIRLING ROAD • FORT LAUDERDALE, FL 33312-6525
TELEPHONE (954) 987-7550

jurisdiction, Fed.R.Civ.P. 4(e) provides that personal jurisdiction be determined under Florida's Long Arm Statute, and by whether sufficient minimum contacts exist between Defendants and the forum state. *See Vax-d Medical Technologies, LLC v. Allied Health Management, Limited,* 2006 W. L. 680659 *1 (M.D. Fla. 2006) (citing *Sculptchair, Inc. v. Century Arts, Limited* 94 F. 3d 623 (11th Cir. 1996) (*Cable/Home Communication Corp. v. Network Prod.,* 302 F. 2d 829, 855 (11th Cir. 1990)).

Therefore, personal jurisdiction is governed by the state law standard of the forum in which the federal court sits. *Telemedia Communications, Inc. v. St. Francis Inv. Properties, L.P.,* 2007 WL 4116052 at *1 (M.D. Fla.)(citing *Pizzabiocche v. Vinells,* 772 F.Supp. 1245 (M.D. Fla. 1991). Florida law requires that this Court undertake a two-part analysis to determine whether personal jurisdiction exists over a nonresident defendant. *Horizon Aggressive Growth v. Rothstein-Kass,* 421 F.3d 1162,1166 (11th Cir. 2005). First, the Court must evaluate the jurisdiction under the Florida long arm statute. *JB Oxford Holdings, Inc. v. Net Trade, Inc.,* 76 F.Supp.2d 1363, 1365 (S.D. Fla. 1999) (citing *Cable/Home Comm. Corp. v. Network Prods., Inc.,* 902 F.2d 829 (11th Cir. 1990)). Second, the Court must consider whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment of the United States Constitution so that maintenance of suit does not offend "traditional notions of fair play and substantial justice." *Id.* (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945)). Both prongs of the analysis must be satisfied before a Florida state or federal court can exercise personal jurisdiction over a nonresident defendant. *See Robinson v. Giamarco & Bill, P.C.,* 74 F.3d 253, 256 (11th Cir. 1996) (citing *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir. 1990)).

## IV. FLORIDA'S LONG ARM STATUTE: FLA. STAT. § 48.193 DOES NOT CONFER JURISDICTION OVER DEFENDANTS

Plaintiff suggests that Defendants are subject to specific jurisdiction in Florida by virtue of Fla. Stat. §48.193(1)(a). *See* Complaint at ¶ 19(ii). That section provides for personal jurisdiction as follows:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state. . . .

Fla. Stat. §48.193(1)(a) (emphasis supplied). The assertion of personal jurisdiction under this subsection is limited to situations where the cause of action "arises from" the defendant doing business in Florida. *Bloom v. A.H. Pond Co., Inc.*, 519 F.Supp. 1162, 1168 (S.D. Fla. 1981).

To invoke jurisdiction over a nonresident pursuant to section 48.193(1)(a), KVAR must satisfy two critical elements. First, the plaintiff must establish that the "[t]he activities of the [non-resident defendant] . . . considered collectively . . . show a general course of business activity in the State for pecuniary benefit." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996) (citing *Dinsmore v. Martin Blumenthal Assocs.*, Inc., 314 So.2d 561, 564 (Fla. 1975)). This requires a more substantial connection with the forum than the "minimum contacts" necessary to satisfy the Due Process Clause of the Fourteenth Amendment. *See Utility Trailer Manufacturing Co. v. Cornett*, 526 So.2d 1064, 1066 (Fla. 1st DCA 1988).

8

Next, KVAR must establish that there is a substantial causal connection between plaintiff's cause of action and the non-resident defendant's business activities. *See Sun Trust Bank v. Sun Int'l. Hotels, Ltd.*, 184 F.Supp.2d 1246, 1269 (S.D. Fla. 2001); *deMco Technologies, Inc. v. C.S. Engineered Castings, Inc.*, 769 So.2d 1128, 1131 (Fla. 3d DCA 2000). This requirement has often been described by Florida courts as "connexity," and must be met before specific jurisdiction will attach under Section 48.193(1)(a). *Bloom*, 519 F.Supp. at 1168. Florida's connexity requirement sets a higher standard than that which is required under most other jurisdictions' long arm statutes. *New Lenox Industries, Inc. v. Fenton*, 510 F.Supp.2d 893, 902 (M.D. Fla. 2007).

Defendants do not conduct business in Florida, nor do they maintain any presence in the State. All of Defendants' business activities, viewed as a whole, take place within the Delaware region, as contemplated under the Regional Agreement. Even more remote is any alleged wrongdoing that could be attributable to Chieffo, Chieffo Electric, or Gillen, individually.

Tri-State has engaged in no activities in Florida in connection with the Regional Agreement, and therefore cannot be characterized as having engaged in a "general course of business activity in the State for pecuniary gain." Tri-State, a Delaware limited liability company, maintained its principal place of business in Delaware. Gillen and Chieffo, as co-presidents, formed Tri-State to distribute electrical products in Delaware and surrounding areas. Tri-State has never owned any real property in Florida or maintained an office in Florida.

LAW OFFICES
BECKER & POLIAKOFF, P.A. • 3111 STIRLING ROAD • FORT LAUDERDALE, FL 33312-6525
TELEPHONE (954) 987-7550

The Regional Agreement was negotiated and executed in Delaware by KVAR and Tri-State. It defines Tri-State's exclusive territory as Delaware, Maryland, and Pennsylvania. Tri-State conducted business exclusively in those three states.

Tri-State's co-presidents are Delaware residents, and do not maintain an office or conduct business in Florida, nor do they maintain any real property in Florida. They traveled to Florida one time, in their capacity as co-presidents of Tri-State, at the outset of the Initial Agreement, which is not at issue in this case. The Regional Agreement was negotiated and signed in Delaware. The Regional Agreement does not contain a forum selection clause, and contemplates business activities outside of this jurisdiction. Although Tri-State telephoned orders to KVAR, KVAR shipped all products to Tri-State in Delaware. Moreover, KVAR made service calls upon Tri-State in Delaware, including personally coming to Tri-State's offices to inspect and accept return of defective goods.

Moreover, neither Chieffo or Chieffo Electric, nor Gillen have engaged in conduct that could subject them to jurisdiction within this State. KVAR's Complaint fails to attribute any specific conduct to either of these Defendants. Chieffo Electric is a local, Delaware based electrical contracting company, and has only done business in Delaware and the surrounding area. Chieffo traveled once to Florida in his capacity as co-president of Tri-State, at the outset of the Initial Agreement with KVAR, and has not since returned.

**A. There is No "Connexity" or Substantial Causal Relationship Between Plaintiff's Claims and Defendant's Forum Activities**

Jurisdiction under section 48.193 is also inappropriate because there is no "connexity" between Defendants' limited forum contacts and Plaintiff's claims. The

10

"connexity" provision of section 48.193(1)(a) requires that there be some "direct affiliation, nexus, or substantial connection" between the cause of action and activities arising within the state. *See Sun Trust Bank*, 184 F.Supp.2d at 1269 (citing *Citicorp Ins. Brokers Ltd. v. J.R. Chairman*, 635 So.2d 79, 81 (Fla. 1st DCA 1994)); *Glovegold Shipping, Ltd. v. Sveriges Angfartygs Assurans Forening*, 791 So.2d 4, 10 (Fla. 1st DCA 2000), *rev. denied*, 817 So.2d 851 (Fla. 2000).

In its Complaint, KVAR alleges various causes of action based upon Defendants' alleged violation of the Lanham Act, breach of the Regional Agreement, and the NDA. However, none of these claims "arise from" any alleged in-state activities.

The Initial Agreement, which was entered into by Tri-State and KVAR in Florida, was superseded by the Regional Agreement, under which KVAR sues. The negotiations culminating in the Regional Agreement took place in Delaware, where it was signed. There simply is no connexity between KVAR's contract claims and Tri-State's contact with Florida.

Plaintiff's Lanham Act claims similarly fail the connexity requirement. These claims have no "direct affiliation, nexus, or substantial connection" with the Tri-State's limited contact with Florida. Plaintiff's allegations of wrongdoing do not "arise from" activities undertaken by any of the Defendants within the State of Florida. On the contrary, to the extent that KVAR alleges claims in connection with its unregistered trademark rights or for false advertising, those claims are based exclusively on conduct occurring in Delaware and the surrounding area. Tri-State never made sales within this jurisdiction, and limited its sales, marketing and service activities to the area of its distributorship - - Delaware, Maryland and Pennsylvania.

LAW OFFICES
BECKER & POLIAKOFF, P.A. • 3111 STIRLING ROAD • FORT LAUDERDALE, FL 33312-6525
TELEPHONE (954) 987-7550

The NDA also fails to provide the required connexity for KVAR's claims. The only parties to the NDA were Gillen and KVAR. Gillen executed the NDA in Delaware, individually, before Tri-State existed, as part of a single retail purchase. There is no allegation that Gillen breached the NDA in Florida, or that it resulted in impacting the state.[4] The alleged breach of the NDA, by Gillen, therefore fails to provide connexity to Plaintiff's claims with Florida.

Additionally, the Regional Agreement does not reference the NDA, and contains an integration clause at paragraph 20 stating that it encompasses the entire agreement between the parties. The NDA is simply inapplicable to the relationship between Tri-State and KVAR, and the alleged breach of the NDA fails to provide connexity between Plaintiff's claims and the forum State.

**B.      48.193(g) Does Not Confer Specific Jurisdiction Over the Defendants**

Plaintiff further alleges that Defendants are subject to long arm jurisdiction by virtue of Fla. Stat. section 48.193(1)(g), which provides that a person submits to the jurisdiction of the Florida courts for any cause of action arising from the breach of "a contract in this state **by failing to perform acts required by the contract to be performed in this state.**" *See* Complaint at ¶ 19 (iv). However, "It is not enough that a foreign defendant merely contract with a Florida resident." *Washington Capital Corp. v. Milandco, Ltd.,* 695 So.2d 838, 841 (Fla. 4th DCA 1997); *Cosmopolitan Health Spa, Inc. v. Health Indus., Inc.,* 362 So.2d 367, 368 (Fla. 4th DCA 1978)). Rather, "there must exist a duty to perform an act in Florida; a contractual duty to tender performance to a Florida resident is not in itself sufficient to satisfy the statute." *Posner v. Essex*

---

[4]   In fact, there are no allegations regarding how Gillen purportedly breached the NDA.

LAW OFFICES
BECKER & POLIAKOFF, P.A. • 3111 STIRLING ROAD • FORT LAUDERDALE, FL 33312-6525
TELEPHONE (954) 987-7550

*Insurance Co.*, 178 F.3d 1209, 1218 (11th Cir. 1999); *see also Groome v. Feyh*, 651 F.Supp. 249, 252 (S.D. Fla. 1986) (holding that no jurisdiction existed under § 48.193(1)(g) since there was no indication that contractual duty allegedly breached was to be performed in Florida); *Hamilton v. Alexander Proudfoot Co. Worldwide Headquarters*, 576 So.2d 1339, 1340-41 (Fla. 4th DCA 1991) (holding that contract did not fall within the purview of § 48.193(1)(g) because there is no contractual requirement that any material be returned to . . . Florida.").

Here KVAR cannot satisfy its burden of showing that the Regional Agreement required performance by Defendants in Florida. Although Plaintiff alleges generally that Defendants breached a contract in the state of Florida by failing to perform acts required by the contract to be performed in the State of Florida (Comp. ¶19), the plain terms of the Regional Agreement, along with the parties' course of dealing, belie Plaintiff's jurisdictional allegations.

The Regional Agreement establishes that Tri-State's material obligations were to be performed outside of Florida. This alone should be enough to preclude long arm jurisdiction under section 48.193(1)(g). Tri-State and KVAR's course of dealing illustrates that the parties' relationship was centered in Delaware. Taylor traveled into Delaware several times to make service calls on Tri-State. Since signing the Initial Agreement, which is not at issue, Defendants never traveled to Florida for any reason. To pay for goods, KVAR debited Tri-State's credit card. KVAR exercised no control over Tri-State's marketing and sales activities from Florida. Tri-State did not seek KVAR's approval of marketing content or media, nor did it consult with KVAR regarding Tri-State's operations. Rather than create a home office-satellite relationship,

LAW OFFICES
BECKER & POLIAKOFF, P.A. • 3111 STIRLING ROAD • FORT LAUDERDALE, FL 33312-6525
TELEPHONE (954) 987-7550

the Regional Agreement merely granted Tri-State the exclusive right to distribute KVAR product in a region, and called for no ongoing duty of performance by Tri-State in Florida.

The payment clause found in the Regional Agreement, standing alone, is insufficient to confer long arm jurisdiction under section 48.193(1)(g). Courts have uniformly held that "the mere failure to pay money in Florida, standing alone, will not suffice to obtain jurisdiction over a nonresident defendant." *Venetian Salami*, 554 So.2d at 503; *Alan Richard Textiles, Ltd. v. Vertilux, Inc.*, 627 So.2d 529, 530 (Fla. 3d DCA 1993); *Payless Drug Stores Northwest, Inc. v. Innovative Clothing Exch., Inc.*, 615 So.2d 249 (Fla. 3d DCA 1993); *O'Brien Glass Co. v. Miami Wall Sys., Inc.* 645 So.2d 142 (Fla. 3d DCA 1994). Accordingly, the place of payment, even if assumed to be Florida, cannot support jurisdiction over Tri-State.

### C. Fla. Stat. § 48.193(2) Does Not Confer "General" Personal Jurisdiction

Paragraph 19 of Plaintiff's Compliant also suggests that this Court has "general" jurisdiction over Defendants. Fla. Stat. §48.193(2) provides:

> A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

To be subject to general jurisdiction under this subsection, Defendants' business activities in Florida must be found to be "continuous and systematic." *See Baftis v. Ara*, 815 So.2d 702, 703 (Fla. 3d DCA 2002); *Rafal v. Mesnick*, 661 So.2d 79, 81 (Fla. 2d DCA 1995); *Milberg Factors, Inc. v. Greenbaum*, 585 So.2d 1089, 1091 (Fla. 3d DCA 1991).

14

(General jurisdiction requires a "more rigorous showing" than specific jurisdiction. *See Northwestern Aircraft Capital Corp. v. Stewart*, 842 So.2d 190, 195 (Fla. 5th DCA 2003).

None of the Defendants have the attributes associated with one who maintains a "continuous and systematic" forum presence. Among other things, Defendants do not (1) own or lease any real property in Florida; (2) maintain an office or place of business in Florida; (3) transact or solicit any business in Florida; (4) maintain bank accounts or other assets located in Florida; and (5) have any agents, representatives or employees in the State. Lastly, Defendants Gillen and Chieffo have resided in Delaware at all times relevant to this action, and Tri-State and Chieffo Electric are both Delaware entities with their principal places of business in Delaware.

Plaintiff alleges Defendants' contacts with Florida generally. Yet, the only forum contacts by the Defendants are limited to (1) Gillen's retail purchase of two KVAR units, privately, for his wife's business (2) one trip by Gillen and Chieffo, on behalf of Tri-State, to discuss the Initial Agreement, which was executed in Florida in March, 2006, but then superseded by the Regional Agreement that was negotiated and signed in Delaware, and; (3) Tri-State's product orders from KVAR via telephone. Such limited contacts fall far short of the "continuous and systematic" threshold. *Accord Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868 (1984) (no general personal jurisdiction existed where nonresident defendant's contacts consisted of sending its chief executive officer to Houston for a contract negotiating session, accepting checks drawn on a Houston bank, purchasing equipment and training services from a Texas corporation for substantial sums, and sending corporate personnel to Fort Worth for training).

**D.    The Confidentiality and Non-Disclosure Agreement Does Not Support the Exercise of Personal Jurisdiction Over the Defendants**

Plaintiff alleges that "Tri-State and/or Gillen" are subject to personal jurisdiction in Florida by virtue of the forum selection provision in the NDA attached to its Complaint as Exhibit "B." *See* Complaint at ¶ 20. Because Gillen executed the NDA individually, before Tri-State was formed, Tri-State and the other Defendants are unaffected by its terms.

The NDA fails to support personal jurisdiction over Gillen, individually. A contractual forum selection provision is insufficient to establish *in personam* jurisdiction, absent an independent basis for jurisdiction under the Florida long arm statute. *See McRae v. J.D./M.D., Inc.*, 511 So.2d 540, 542 (Fla. 1987). In *McRae*, the Florida Supreme Court held that "a contractual choice of forum clause designating Florida as the forum cannot serve as the sole basis for asserting *in personam* jurisdiction over an objecting, nonresident defendant. . . . [because] [c]onspicuously absent from the long arm statute is any provision for submission to in personam jurisdiction merely by contractual agreement." *Id.* at 542, 543. The court further "reject[ed] any suggestion that a defendant waives his due process right to contest the jurisdictional deficiency merely by signing a contract containing a permissive jurisdiction clause." *Id.*

Since *McRae*, Florida courts have refused to exercise personal jurisdiction over nonresident defendants on the basis of a forum selection clause. *See Four Star Resorts Bahamas, Ltd. v. Allegro Resorts Management Services, Ltd.*, 811 So.2d 809, 810-11 (Fla. 3d DCA 2002); *Holton v. Prosperity Bank of St. Augustine*, 602 So.2d 659, 662 (Fla. 5th DCA 1992) ("A contractual forum selection clause cannot serve as a sole basis for asserting in personam jurisdiction over an objecting nonresident defendant."). Rather,

LAW OFFICES
BECKER & POLIAKOFF, P.A. • 3111 STIRLING ROAD • FORT LAUDERDALE, FL 33312-6525
TELEPHONE (954) 987-7550

there must be an independent basis for asserting jurisdiction under the long arm statute. *Id.* There is none in this case.

Because the NDA does not call for performance in Florida, an alleged breach of the NDA, even if coupled with the forum selection clause, does not support the exercise of personal jurisdiction over Gillen. This result is further compelled by the duty to strictly construe Fla. Stat. section 48.193(1)(g) when presented with a contract that does not explicitly require performance in Florida. *See Cosmopolitan Health Spa,* 362 So.2d at 368.

In *Hamilton v. Alexander Proudfoot Co. Worldwide Headquarters,* 576 So.2d 1339 (Fla. 4th DCA 1991), the court concluded that section 48.193(1)(g) did not support the exercise of long arm jurisdiction because the contract which allegedly required a former employee to return confidential materials and documents to the employer did not specifically mandate or require that such materials be returned to the company in Florida:

> [Plaintiff] contends and the trial court agreed, that [Defendant] had violated his contract, which required that, upon termination of his employment, he return all confidential materials and documents furnished by [Plaintiff]. However, it is our conclusion that the contract itself does not fall within the purview of section 48.193(1)(g) because there is no contractual requirement that any material be returned to [Plaintiff] in Florida. . . . Thus, even if there were proof here of a breach of the contract by not returning materials to the employer, there was certainly no proof of a breach of the contract by not performing an act required to be performed in Florida. The contract simply contains no such mandate . . . .

*Id.* at 1340: *See also Alexander Proudfoot Co. Worldwide Headquarters v. Baillie,* 584 So.2d 183 (Fla. 4th DCA 1991) (same); *Vaughn v. AAA Employment, Inc.,* 511 So.2d 1045 (Fla. 2d DCA 1987) (no jurisdiction under § 48.193(1)(g) where contract sued upon

did not expressly require that all books and records be "turned over" to corporation in Florida).

Here, as in *Hamilton* and *Vaughn*, there is no express contractual requirement that Gillen perform any of the obligations of the NDA in the State of Florida. Further, Gillen's forum contacts were limited to his private purchase of two KVAR units for his wife's business, while Gillen was in Delaware. A defendant's purchase of goods from a Florida resident does not suffice to confer personal jurisdiction over that defendant. *Aluminator Trailers, LLC v. Loadmaster Aluminum Boat Trailers, Inc.*, 832 So.2d 822, 823 (Fla. 2nd DCA 2002)(citing *Marsh Supermarkets, Inc. v. The Queen's FS Corp.*, 696 So.2d 1207, 1208 (Fla. 3rd DCA 1997). A defendant's occasional visits to the forum in connection with the purchases does not alter this conclusion. *Id.* Plaintiff's jurisdictional allegations are clearly insufficient.

## V.  THE EXERCISE OF PERSONAL JURISDICTION OVER THE DEFENDANT DOES NOT COMPORT WITH DUE PROCESS

Assuming *arguendo* that Defendants are within the reach of Florida's long arm statute, the Court must still determine whether its exercise of personal jurisdiction comports with due process. The due process analysis is a two-step inquiry: (1) the Court must establish whether a defendant had the requisite minimum contacts in the forum state, *Sculptchair*, 94 F.3d at 630, and; (2) the Court must determine if exercising personal jurisdiction over the defendant would offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 66 S.Ct. 154 (1945).

Florida's long arm statute is not co-extensive with minimum contacts required by due process. *Venetian Salami Co. v. Parthenais*, 554 So.2d 499,500 (Fla.1989). Where a defendant has not established "minimum contacts" within the forum state, a bare

LAW OFFICES
BECKER & POLIAKOFF, P.A. • 3111 STIRLING ROAD • FORT LAUDERDALE, FL 33312-6525
TELEPHONE (954) 987-7550

allegation that the defendant is subject to the long arm statute is insufficient to confer personal jurisdiction because the Constitutional requirements of due process are not satisfied. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528; *Venetian Salami*, 554 So.2d 499 ("mere proof of any one of the several circumstances enumerated in [Florida's long arm statute] ... does not automatically satisfy the due process requirement of minimum contacts").

Minimum contacts implicate a three-part analysis. First, the contacts must relate to the cause of action or have given rise to it. Second, the contacts must involve some purposeful availment of the privilege of conducting business and other activities within the forum, thereby invoking the benefits and protections to its laws. Lastly, the defendants' contacts with the state must be such that the defendant should reasonably anticipate being haled into court there. *Sculpchair* 94. F.3d at 631. The "constitutional touchstone" of the minimum contacts analysis is whether the defendants' conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there. *Burger King*, 471 U.S. at 474, 105 S.Ct. 2174. Prior negotiations, and contemplated future consequences, along with the terms of the contract and the parties actual course of dealing must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum. *Id.* at 475, 105 S.Ct. 2174.

### A. Tri-State

Tri-State's contact with the State of Florida does not relate to KVAR's claims. KVAR alleges a breach of the Regional Agreement and Lanham Act claims against Tri-State. However, as explained above, the Regional Agreement was negotiated, signed and calls for performance in Delaware. The Terms of the Regional Agreement establish Tri-

LAW OFFICES
BECKER & POLIAKOFF, P.A. • 3111 STIRLING ROAD • FORT LAUDERDALE, FL 33312-6525
TELEPHONE (954) 987-7550

State's business operations in Delaware, Maryland, and Pennsylvania. The material obligations require Tri-State's performance outside of Florida.

The Regional Agreement does not demonstrate Tri-States' purposeful availment to the rights and privileges of doing business in Florida. Although Tri-State placed orders for goods over the telephone to KVAR, Florida law provides that the mere purchase of goods in the forum state, even when those purchases are extensive, does not constitute sufficient minimum contacts justifying the exercise of personal jurisdiction. *Aluminator Trailers, LLC v. Loadmaster Aluminum Boat Trailors, Inc.*, 832 So.2d 822, 823 (Fla. 2nd DCA 2002)(citing *Marsh Supermarkets, Inc. v. The Queen's FS Corp.*, 696 So.2d 1207, 1208 (Fla. 3rd DCA 1997). A defendant's occasional visits to the forum in connection with the purchases are also unavailing. *Id.*

KVAR and Tri-State's actual course of dealing reveals that Delaware was the center of the parties' business. Tri-State's connections with Florida fall far short of the "continuing and wide-reaching contacts" that characterizes a company's minimum contacts with a forum to satisfy minimum contacts with a forum state. *See Burger King*, 105 S.Ct. at 2185 at 2186.

In sum, Tri-State operated a Delaware-centered business, which marketed, sold, and installed products that were manufactured in Florida. Tri-State could not have reasonably anticipated being haled a into Florida court to defend against claims of wrongdoing that occurred, if at all, in Delaware.

**B.    Gillen, Chieffo And Chieffo Electric**

Gillen's contacts with the State of Florida, in his individual capacity, are limited to his private purchase of two KVAR units for his wife's Delaware store. It is well-

LAW OFFICES
BECKER & POLIAKOFF, P.A. • 3111 STIRLING ROAD • FORT LAUDERDALE, FL 33312-6525
TELEPHONE (954) 987-7550

settled that the mere purchase of goods in the forum state does not constitute minimum contacts. *Aluminator,* 832 So.2d at 823. Similarly, mere non-payment, standing alone, does not constitute minimum contacts. *Venetian Salami Co. v. Parthenais,* 554 So.2d 499, 503 (Fla. 1989).

The NDA, signed in Delaware, is insufficient to satisfy minimum contacts. *McRae v. J.D./M.D., Inc.,* 511 So. 2d at 542 (Fla. 1987); *see also Matrix Z, LLC v. Landplan Designs, Inc.,* 493 F.Supp.2d 1242, 1248 (S.D. Fla. 2007) (finding that no Florida case that has considered a disputed forum selection provision as the sole basis for purposeful availment under the minimum contacts analysis). All conduct attributed to Gillen took place exclusively within the Delaware region. Accordingly, Gillen did not purposely avail himself of the privileges of doing business in Florida and could not have reasonably anticipated being haled into court in this jurisdiction.

Joseph Chieffo's only contact with Florida on behalf of Tri-State, or individually, occurred when he signed the Initial Agreement. Neither Chieffo nor Chieffo Electric had any contact with the State of Florida as entities separate from Tri-State. Neither Chieffo nor Chieffo Electric could have reasonably foreseen being haled into a Florida court to defend this matter.

**C.** **Traditional Notions of Fair Play and Substantial Justice**

To determine whether the exercise of personal jurisdiction over a defendant comports with traditional notions of fair play and substantial justice, the Court should consider the burden on the defendant, the interests of the forum in adjudicating the dispute, and the plaintiff's interest in obtaining relief within the forum. *Sculptchair,* F.3d

at 631 (quoting *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113, 107 S.Ct. 1026 (1987)).

Litigating the instant case in Florida poses a substantial burden on the Defendants, who all reside and do business in Delaware. Florida has a marginal interest in adjudicating a breach of contract claim arising out of a contract that was negotiated, executed and performed in Delaware. It is Delaware, not Florida, that has the "obvious interest in stamping out the type of nefarious economic chicanery alleged in [KVAR's] complaint." *Sculptchair*, F.3d at 632. Lastly, because minimum contacts have not been established by KVAR, it cannot place much emphasis on the interests of the plaintiff to justify the serious burdens placed on the defendant. *Umbach v. Mercator Momentum Fund, L.P.*, 2007 WL 2915910 at *7 (S.D. Fla. 2007) ( *Asahi*, 4890 U.S. at 114)).

## VI. MOTION TO TRANSFER VENUE TO THE DISTRICT COURT OF DELAWARE

As an alternative to dismissal, this Court should transfer the instant action to District Court of Delaware, pursuant to 28 U.S.C. §1404. Section 1404(a) provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought.

Transfer pursuant to 28 U.S.C. §1404(a) is within the discretion of the Court. *DelMonte Fresh Produce Co. v. Dole Food Co., Inc,* 136 F. Supp. 2d 1271, 1281 (S.D. Fla. 2001) (citing *Brown v. Connecticut Gen. Life Ins. Co.*, 934 F. 2d 1193, 1197 (11th Cir. 1991)). Transfer of venue is intended to "avoid unnecessary inconvenience to the litigants, witnesses and the public, and to conserve time, energy and money." *Id.* (citing *Vadusen v. Barrack,* 376 U.S. 612, 616, 84 S. Ct. 805, 809 (1964)). The burden of persuasion on the request to transfer is on the moving party. In determining a motion to transfer, the

Court must first determine whether the action may have been brought in the proposed

transferee court. Once this threshold determination is made, the court then considers

various factors to determine whether the proposed venue is more convenient. *Id.* (citing

*Miot v. Kechijian*, 830 F. Supp. 1460, 1465 – 1466 (S. D. Fla. 1993)).

### A. The Instant Action Could Have Been Brought In The District Court Of Delaware

Whether the instant case might have been brought in the proposed court depends

on whether Defendants are subject to jurisdiction in that court, whether venue is

appropriate there, and whether Defendants are amenable to service of process in

Delaware. *See Id.* (citing *Garay v. Electronics*, 755 F. Supp. 1010 (M.D. Fla. 1991);

*Jewelmasters, Inc. v. May Dept. Stores Co.*, 840 F. Supp. 893, 894 (S. D. Fla. 1993)).

Subject matter jurisdiction in the instant case is premised upon the Lanham Act

and diversity of citizenship pursuant to 28 U.S.C. §1332. The same basis for subject

matter jurisdiction is available to KVAR in the District Court of Delaware. Defendants

are residents of the State of Delaware and have their principle place of business in

Delaware. There is no doubt that Defendants are all subject to personal jurisdiction in

Delaware, venue lies within that forum and service of process is proper there (and was

actually accomplished in Delaware in the instant case). Consequently, this action could

have been brought in the District Court of Delaware.

### B. The Factors to be Considered in Determining a Motion to Transfer Venue Weigh Heavily in Favor of Transfer

Once it is determined that the action could have been brought in the alternative

forum, the Court then considers whether is in the convenience of the parties, witnesses,

and in the interest of justice to transfer the case. Factors which the Court considers in this

LAW OFFICES
BECKER & POLIAKOFF, P.A. • 3111 STIRLING ROAD • FORT LAUDERDALE, FL 33312-6525
TELEPHONE (954) 987-7550

analysis include: (1) convenience of the parties; (2) convenience of the witnesses; (3) relative ease of access to sources of proof; (4) availability of process to compel unwilling witness; (5) cost of obtaining the presence of witnesses, and; (6) the public's interest. *DelMonte Fresh Produce*, 136 F. Supp. 2d at 1282 (citing *Jewelmasters* F. Supp at 895); *Miot*, F. Supp. at 1460.

### 1.    The Convenience of the Parties

The convenience of the parties weighs heavily in favor of litigating the instant case in Delaware. It is undisputed that Delaware and the surrounding area was the locale where all operative facts occurred. *Accord. Cavu Releasing, LLC v. Fries*, 419 F. Supp. 2d 388, 394 (S. D. N. Y. 2005) (listing where "operative facts" occur as a primary consideration in a motion to transfer venue pursuant to §1404 (a)). In *S.C. Johnson & Son, Inc. v. Buzz Off Insect Shield*, the court observed that in assessing whether to transfer intellectual property cases, courts "often focus on the activities of the alleged infringer, its employees, and its documents; therefore, the location of the infringer's place of business is often the critical and controlling consideration." (quoting *H.B. Sherman Mfg. Co. v. Wayne Bird National Sales Corp.*, 979 F. Supp. 627, 630 (N. D. Ill. 1997)).

Here, all operative facts supporting KVAR's claims under the Lanham Act would have occurred, if at all, in the Delaware area, and outside of this Court's jurisdiction. The convenience of the parties is clearly enhanced by litigating this case in the forum where the alleged wrongdoing occurred and weighs strongly in favor of transfer.

### 2.    Convenience of Witnesses/Ease of Access to Sources of Proof

It follows that since all of Defendants' activities occurred in the Delaware area, all documents, physical evidence, and witnesses would also be found there. All witnesses

LAW OFFICES
BECKER & POLIAKOFF, P.A. • 3111 STIRLING ROAD • FORT LAUDERDALE, FL 33312-6525
TELEPHONE (954) 987-7550

which are likely to support or refute KVAR's allegations are located in the Delaware area. The predominant claims contained in KVAR's complaint allege trademark violations in connection with re-sale and re-labeling of KVAR products. All of this activity occurred in the Delaware area, if at all, where the customers/witnesses are located. All documents, records and other physical evidence in connection with Defendants' alleged activities are located in the Delaware area.

### 3. Availability of Process to Compel Unavailing Witnesses/ Cost of Obtaining Presence of Witnesses

The same process available in this Court to compel unwilling witnesses to testify or appear is available in the District Court of Delaware. The cost of obtaining the presence of witnesses and would be considerable lower in that forum, given the location of the witnesses, evidence in this matter are within close proximity to Delaware. This factor weighs in favor of transfer.

### 4. Public Interest

Because the alleged wrongdoing attributed to Defendants all took place in Delaware and the surrounding area, Delaware has a much greater public interest in adjudicating the claims raised in this matter. If, as alleged, Defendants have engaged in Lanham Act violations, including false designation of original, false advertising, counterfeiting, and other misconduct, then those actions were carried out upon unwitting consumers in Delaware and the surrounding area. The District Court of Delaware has a strong interest in adjudicating the issues raised in Plaintiff's Complaint given that citizens within that jurisdiction are the consumers to which Defendants' alleged deception was targeted.

### CONCLUSION

LAW OFFICES
BECKER & POLIAKOFF, P.A. • 3111 STIRLING ROAD • FORT LAUDERDALE, FL 33312-6525
TELEPHONE (954) 987-7550

Based on the foregoing, Defendants respectfully request that this Court dismiss Plaintiff's Complaint for lack of personal jurisdiction, or in the alternative, transfer this case to the District Court of Delaware pursuant to 28 U.S.C. §1404 (a), together with such other relief as the Court deems just and proper.

## CERTIFICATE OF SERVICE

WE CERTIFY that March 21, 2008 the foregoing was electronically filed with the Clerk of the Court using CM/ECF and a hard copy furnished by mail to Jeffrey Mark Garber, Casey Ciklin Lubitz Martens & O'Connell, 515 North Flagler Drive, 18th Floor, West Palm Beach, FL 33401; William J. Heller, McCarter & English, LLP , 4 Gateway Center, 100 Mulberry St., Newark, NJ 07102-4096, and Lori J. Shyavitz, McCarter & English, LLP, 265 Franklin Street, Boston, MA 02110.

BECKER & POLIAKOFF, P.A.
Attorneys for Defendants
Emerald Lake Corporate Park
3111 Stirling Road
Fort Lauderdale, FL 33312-6525
Telephone: (954) 987-7550
Facsimile: (954) 985-4176

/S/ Kevin Markow, Esq.
Gary C. Rosen, Esq.
Florida Bar No. 310107
Grosen@becker-poliakoff.com
Kevin Markow, Esq.
Florida Bar No. 66982
KMarkow@becker-poliakoff.com

FTL_DB: T12339/118594:1104943_1

LAW OFFICES
BECKER & POLIAKOFF, P.A. • 3111 STIRLING ROAD • FORT LAUDERDALE, FL 33312-6525
TELEPHONE (954) 987-7550