IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TRI-STATE ENERGY SOLUTIONS, :
LLP, CHIEFFO ELECTRICS, :
LAWRENCE GILLEN, and :
JOSEPH J. CHIEFFO, :
    Plaintiffs, :
 :
v. : Civil Action No. 08-209-RGA
 :
KVAR ENERGY SAVINGS INC., :
STEVEN B. FISH, and :
GREGORY G. TAYLOR, :
 :
    Defendants. :

Leo John Ramunno, Esq., Wilmington, Delaware, Attorney for Plaintiffs.

Raymond Otlowski, Esq., Wilmington, Delaware, Attorney for Defendant Gregory G. Taylor.

MEMORANDUM OPINION

February 16, 2012

1

ANDREWS, U.S. DISTRICT JUDGE:

Presently before the Court is Defendant Gregory G. Taylor's Motion for Summary Judgment and Incorporated Memorandum of Law (D.I. 194), and the Answering Memorandum filed by Plaintiffs Tri-State Energy Solutions, LLP, Chieffo Electric, Inc., Lawrence Gillen, and Joseph Chieffo (D.I. 199). For the reasons discussed, Taylor's Motion is granted.

## BACKGROUND

This action arises out of a distribution agreement between Defendant KVAR Energy Savings Inc. and Tri-State, whereby Tri-State was to distribute KVAR's energy-saving products in Delaware, Maryland, and Pennsylvania. The relevant facts as presented by Taylor, and undisputed by Plaintiffs, follow.

Taylor invented KVAR's "KEC units," which are designed to prevent waste of electricity, founded KVAR, and was KVAR's president and sole shareholder until the summer of 2007. Around December 2005, Gillen contacted KVAR to inquire about purchasing KEC units for his small business. Taylor informed Gillen that KVAR did not have a Delaware distributor and was not in the practice of selling units to end users, but made an exception and sold two units to Gillen. A few months later, Gillen contacted KVAR again to inquire about becoming KVAR's Delaware distributor. KVAR and Tri-State entered into a Distributorship Agreement in March 2006, and a few months later entered into the broader regional distribution agreement that now governs the relationship between KVAR and Tri-State. Taylor negotiated these agreements on behalf of KVAR. So long as Taylor represented KVAR in its dealings with Tri-State, the relationship between KVAR and Tri-State was harmonious.

Sometime in 2006, Taylor asked Defendant Steven B. Fish to assist in growing KVAR. Fish

2

volunteered his services until September 2007, when he began to draw a salary. Fish contributed some capital to KVAR and considered himself a part owner / shareholder of KVAR by August 2007. By September 2007, Fish was in charge of KVAR's day-to-day operations. Starting in September 2007, Taylor became less and less aware of KVAR's corporate activities. Taylor traveled frequently, conducting field training, and averaged only half a day a week at the office. He spoke only to a few employees about technical aspects of the KEC units, and was not kept informed of KVAR's day-to-day operations. He did not spend much time on his computer, and rarely read his KVAR emails. Eventually, Taylor was phased out of KVAR; his computers, records, desk, and access to company email were taken from him. Taylor was terminated from KVAR in April 2009.

As Plaintiffs stated in their Revised Amended Complaint, "Until the time when Fish became a controlling principal of KVAR Energy, the parties' business relationship was harmonious. All negotiations and dealings between the parties had been conducted through Taylor, KVAR Energy's president and principal owner." (D.I. 83, ¶ 23). Plaintiffs went on to allege that "the relationship took a drastic negative turn" "[w]hen Fish became involved with KVAR Energy's operations." *Id.*

The relationship between KVAR and Tri-State fell apart in or around September 2007, under circumstances that need not be fleshed out to adjudicate Taylor's Motion. As the relationship was falling apart, KVAR posted an "Impostor List" on its website claiming certain vendors and products, including Tri-State, Chieffo, and Tri-State's "Kilowatt Nanny" product, were KVAR "impostors" or otherwise illegitimate.

Tri-State filed its initial complaint against KVAR only (not Taylor as an individual) in the

Delaware Court of Chancery on November 19, 2007, and served it on March 5, 2008. (D.I. 199 Ex. D). That complaint, verified by Gillen, provided that KVAR acted through Fish in creating and posting the "Impostor List." *Id.* ¶ 14.

On January 18, 2008, KVAR only (not Taylor as an individual plaintiff) filed a complaint against Tri-State, Gillen, Chieffo, and Chieffo Electric, Inc., in the Middle District of Florida, which transferred the case to this Court on January 21, 2009. (Civil Action No. 09-41-RGA, D.I. 1) ("The Florida Action"). KVAR removed Tri-State's Chancery case to this Court on April 11, 2008, thereby initiating this civil action. (D.I. 1). KVAR and Fish (as an individual counterclaimant) reasserted their claims from the Florida Action as counterclaims in this one. (Florida Action D.I. 1; D.I. 22). The parties have proceeded under this case. (D.I. 192 at 17; D.I. 205).

On March 29, 2010, Plaintiffs amended their complaint, adding Taylor as an individual defendant, alleging that he and Fish were responsible for the creation and posting of the "Impostor List," and alleging claims of intentional interference with contract, trade libel, and defamation against Taylor. (D.I. 80). KVAR and Fish renewed their same counterclaims in response. (D.I. 82). Plaintiffs amended again on April 30, 2010, asserting only trade libel and deceptive trade practices claims against Taylor, and KVAR and Fish again renewed their counterclaims in response. (D.I. 83, 84).

Plaintiffs currently allege two claims against Taylor: trade libel against Tri-State and Chieffo Electric, Inc. (Count III), and deceptive trade practices against all plaintiffs (Count IV). (D.I. 83). Taylor has moved for summary judgment on both claims against him. (D.I. 194).

## DISCUSSION

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the clams in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–461 (3d Cir.1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence ... of a genuine dispute ...." FED.R.CIV.P. 56(c)(1). Where a party fails to properly support an assertion that a fact is genuinely disputed as required by Rule 56(c), the Court may consider the fact undisputed for purposes of the motion, particularly where the Court knows of

no record materials that show grounds for genuine dispute.[1] FED.R.CIV.P. 56(e)(2), advisory committee's note (2010).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir.2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–49; *see Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87 ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## B. Decision

### 1. *Tri-State's and Chieffo Electric's Trade Libel Claim (Count III)*

Tri-State and Chieffo Electric claim that Defendants KVAR, Fish, and Taylor intentionally made and disseminated false and malicious statements about Tri-State and Chieffo Electric with the intent to disparage those parties and their products and services. (D.I. 83, ¶¶ 63-65). It is undisputed that the Impostor List is the basis for this claim against Taylor. (D.I. 199 at 7; D.I. 194 at 6). Tri-State and Chieffo Electric also claim Defendants made these statements with the intent and knowledge that individuals and entities with whom they dealt would no longer deal

---

[1] The 2010 version of FED.R.CIV.P. 56(e)(2) took effect December 1, 2010, a year before Taylor brought his Motion.

with Defendants. (*Id.* ¶ 66). Tri-State and Chieffo Electric claim they have suffered and will continue to suffer irreparable injury and damages in the form of "loss of revenue, profits, goodwill, and further earnings." (*Id.* ¶¶ 67-68).

Taylor moved for summary judgment on Plaintiffs' Claim III, asserting that Fish, not Taylor, was responsible for the Impostor List and that Tri-State cannot show otherwise. (D.I. 194 at 7-8, 11-12). Taylor points to his own testimony that he had no personal knowledge of the Impostor List and how and when companies were added to it, was not adept at using his computer, and was not in the office and not receiving any KVAR emails around the time the Impostor List was posted. (D.I. 194 Appendix A at 309-10, 441-42, 596). He also points to Plaintiffs' original Verified Complaint filed in the Delaware Court of Chancery, which alleged defamation through the Impostor List posted by "KVAR through its agent Steve Fish" - not Taylor. (*Id.* Exh. D ¶ 14).

Plaintiffs' entire response to Taylor's Motion follows:

> As far as Gregory Taylor issue [sic], the problem is that Gregory Taylor testified at his deposition that Steven Fish was responsible for the imposter list and libel statement (Taylor P. 441-442, L21-23, 1-2 Appendix A of Taylor's motion.) Fish however, testified that the responsible party is Gregory Taylor and you have each blaming the other for the libel information and imposter list and therefore there is a genuine issue of fact that must be described [sic] by the jury.

(D.I. 199 at 6). Plaintiffs did not cite to any portion of Fish's testimony or submit any exhibits or appendices. The portions of Fish's testimony submitted with Taylor's Motion do not support Plaintiffs' statement. *See* (D.I. 194, Appx. B).

The parties do not dispute that a claim for defamation, via both libel and slander, requires proof of: 1) the communication's defamatory character; 2) publication; 3) that the

communication refers to the plaintiff; 4) the third party's understanding of the communication's defamatory character; and 5) injury. *Adams v. Selhorst*, 779 F.Supp.2d 378, 395 (D. Del. 2011). When the statements at issue are made by someone other than the defendant, summary judgment in favor of the defendant is appropriate. *Hansen v. E.I. DuPont de Nemours & Co.*, 2011 WL 576598, *6 (D. Del. Feb. 9, 2009); *Gonzalez v. Avon Prods., Inc.*, 609 F.Supp. 1555, 1559 (D. Del. 1985) (requiring a showing of "fault amounting at least to negligence on the publisher's part").

Taylor has met his burden by pointing out the absence of evidence supporting Plaintiffs' claim that Taylor himself published the Impostor List or in any other way defamed Plaintiffs. *See Celotex*, 477 U.S. at 323. The relationship between KVAR and Tri-State was harmonious while Taylor represented KVAR. By the time the relationship fell apart and the Impostor List was posted, Taylor was no longer in charge of, or aware of, KVAR's day to day activities; he was out of the office for all but a few hours each week; and he was not reading his corporate emails. Taylor's lack of facility with his computer and access to emails is inconsistent with his having posted anything to KVAR's website.

Plaintiffs' general allegations that Fish testified that Taylor published the Impostor List, without any citation to the record, are insufficient to create a genuine issue of material fact. As the Court knows of no record materials that show grounds for genuine dispute as to whether Taylor or Fish published the Impostor List, Taylor's testimony that he had no personal knowledge of the Impostor List and how and when companies were added to it, and that Fish was responsible for the Imposter List, is considered undisputed for purposes of this motion. *See* FED.R.CIV.P. 56(c)(1), (e)(2), advisory committee's note (2010). Plaintiffs do not dispute any

8

other relevant fact presented by Taylor. Taylor's Motion for summary judgment on Claim III is granted.[2]

   2. *Plaintiffs' Deceptive Trade Practices Claim (Count IV)*

In Count IV, Plaintiffs allege Defendants made misleading and disparaging statements to take Plaintiffs' customers and goodwill surrounding KVAR's products in violation of the Delaware Deceptive Trade Practices Act, 6 *Del.C.* § 2531 *et seq.* ("DTPA") (D.I. 83 ¶¶ 71-72). Plaintiffs claim Defendants' statements "and other deceptive conduct" damaged Tri-State, "including but not limited to a loss of customers, revenue and goodwill." *Id.* ¶¶ 73, 76. As in Count III, the statements at issue with regard to Taylor are the Impostor List. (D.I. 199 at 7; D.I. 194 at 6).

As with Count III, Taylor argues that summary judgment is appropriate because Plaintiffs cannot prove Taylor is individually liable for any deceptive trade practices by KVAR as a corporate entity, and in fact the evidence shows Taylor was not responsible for the Impostor List.[3] (D.I. 194 at 15-17). This Court predicted long ago that the Delaware Supreme Court

---

   [2] Taylor also argues a) the statement that Plaintiffs' "Kilowatt Nanny" product was an "impostor" is a privileged expression of opinion or "sales puffing," or at least not defamatory; and b) labeling the "Kilowatt Nanny" as an "impostor" was not false, as Plaintiffs and KVAR in fact were no longer affiliated when the Impostor List was published. (D.I. 194 at 9, 12-13). Because Taylor has demonstrated there is no genuine issue of material fact with regard to whether he published the Impostor List or otherwise defamed Plaintiffs, and despite Plaintiffs' failure to respond to Taylor's additional arguments (D.I. 199 at 5-6), which may constitute a waiver, the Court need not evaluate these arguments and therefore does not.

   [3]Taylor also moved for summary judgment on the basis that Taylor's August 2009 termination from KVAR precludes injunctive relief from Taylor, and therefore Plaintiffs lack standing to bring a DTPA claim against him. (D.I. 194 at 17-18). Because Taylor has demonstrated there is no genuine issue of material fact with regard to whether he published the Impostor List or otherwise disparaged Plaintiffs, and despite Plaintiffs' failure to respond to Taylor's additional argument (D.I. 199 at 5-6), which may constitute a waiver, the Court need not evaluate this argument and therefore does not.

9

would follow the generally accepted principle that a corporate officer or employee can be individually liable for deceptive trade practices when he or she is an actual participant in the act or acts of unfair competition. *Brandywine Mushroom Co. v. Hockessin Mushroom Prods., Inc.*, 682 F.Supp. 1307, 1312-13 (D. Del. 1988); *cf. Ayers v. Quillen*, No. Civ.A. 03C-02-004-RFS, 2004 WL 1965866, *4 (Del. Super. June 30, 2004) (requiring a showing that an officer was "actively involved" in activity that violated the Consumer Fraud Act); *State ex rel. Brady v. Preferred Florist Network, Inc.*, 791 A.2d 8, 21-22 (Del. Ch. 2001) (finding corporate officers who were "actively involved" in conduct violative of the UDTPA may be held liable). As set forth with regard to Claim III, Taylor has met his burden by pointing out the absence of evidence supporting Plaintiffs' claim that Taylor published the Impostor List or was actively involved in any other way in any deceptive trade practice. Taylor's motion for summary judgment with regard to Claim IV is granted.

An appropriate order will be entered.