IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TRI-STATE ENERGY SOLUTIONS, :
LLP, CHIEFFO ELECTRIC, INC., :
LAWRENCE GILLEN, and JOSEPH :
J. CHIEFFO, :
    Plaintiffs, :
    v. :    Civil Action No. 08-209-RGA
KVAR ENERGY SAVINGS INC., :
STEVEN B. FISH, and :
GREGORY G. TAYLOR, :
    Defendants. :

## MEMORANDUM OPINION

Leo John Ramunno, Esq. (argued), Wilmington, DE, Attorney for Plaintiffs.

Alisa E. Moen, Esq., Wilmington, DE; Ian M. Cominsky, Esq., Jason A. Snyderman, Esq. (argued), William R. Cruse, Esq., Rosemary McKenna, Esq., Philadelphia, PA, Attorneys for Defendants KVAR Energy Savings Inc. and Steven B. Fish.

August 13, 2012

*Kuhard G. Andrews*

ANDREWS, U.S. DISTRICT JUDGE:

Presently before the Court are the motions for summary judgment submitted by Plaintiffs Tri-State Energy Solutions, LLP, Chieffo Electric, Inc., Lawrence Gillen, and Joseph Chieffo (D.I. 193) and related briefing (D.I. 193, 195, 200, 201, 206), and by Defendants KVAR Energy Savings, Inc. and Steven B. Fish (D.I. 191) and related briefing (D.I. 192, 197, 199, 207). The Court has heard oral argument on both motions. (D.I. 221).

For the reasons discussed, Plaintiffs' Motion is granted as to Counterclaims I, IV, and IX, and denied as to Counterclaims III, V, VI, VIII, XI, and XII. Defendants' Motion is granted as to Tri-State's Counts V and VII; denied as to Plaintiffs' Counts III and IV; and denied as to KVAR's Counterclaims VI and VIII. Plaintiffs' Counts I, II and VI are dismissed, and Defendants' Counterclaims VII (Good Faith and Fair Dealing), X (Deceptive Trade Practices Act), and Count XIII (Declaratory Judgment) are dismissed.

## BACKGROUND

This action arises out of a regional distribution agreement ("RDA") executed between KVAR and Tri-State, whereby Tri-State was to distribute KVAR's energy-saving products in Delaware, Maryland, and Pennsylvania. Gillen and Chieffo were Tri-State's co-presidents. Gregory Taylor founded KVAR, and Fish was brought on as KVAR's CEO. The relationship fell apart; the details will be addressed as necessary to adjudicate the claims here.

Tri-State filed its initial complaint against KVAR in the Delaware Court of Chancery on November 19, 2007, and served it on March 5, 2008. (D.I. 192, Ex. EE, FF). In the interim, on January 18, 2008, KVAR filed a complaint against Tri-State, Gillen, Chieffo, and Chieffo Electric, Inc., in the Middle District of Florida, which transferred the case to this Court on

1

January 21, 2009. (Civil Action No. 09-cv-41, D.I. 1) ("Florida Action"). KVAR removed Tri-State's Chancery case to this Court on April 11, 2008, thereby initiating this action. (D.I. 1).

In April 2009, KVAR reasserted its claims from the Florida Action as counterclaims in this one, and Fish entered the case as a counterclaim plaintiff. (D.I. 22, Florida Action D.I. 1). The parties have proceeded under this case. (D.I. 192 at 17; D.I. 205).[1] On March 29, 2010, Plaintiffs amended their original complaint, adding claims against Fish. (D.I. 80). KVAR and Fish renewed their counterclaims in response. (D.I. 82). Plaintiffs amended again on April 30, 2010, and KVAR and Fish again renewed their counterclaims. (D.I. 83, 84). Plaintiffs' claims against Taylor were resolved against Plaintiffs on summary judgment. (D.I. 209, 210).

Tri-State asserts breach of the implied covenant of good faith and fair dealing by KVAR Energy (Count II); Tri-State and Chieffo Electric, Inc. assert trade libel by all defendants (Count III); all plaintiffs assert deceptive trade practices by all defendants (Count IV); Tri-State seeks declaratory relief regarding express and implied warranties against KVAR Energy (Count V); all Plaintiffs seek declaratory relief regarding trademark rights against KVAR Energy (Count VI); and Gillen asserts intentional infliction of emotional distress by Fish (Count VII). (D.I. 83). The Court previously struck Count I of Tri-State's Revised Amended Complaint, (D.I. 184), and it will now be formally dismissed. KVAR and Fish have moved for summary judgment on all of Plaintiffs' asserted claims, *i.e.*, Counts II-VII. (D.I. 191).

KVAR asserts counterclaims of Lanham Act trademark infringement (Counterclaim I),

---

[1] Plaintiffs did not answer the Florida Action claims on the merits. (Florida Action D.I. 22). KVAR and Fish have suggested that dismissing the transferred Florida action as moot would be appropriate while Plaintiffs contend they are entitled to reimbursement of attorneys' fees from the Florida Action. (D.I. 192 at 17 n.8; D.I. 205). The Court need not reach this question today.

Lanham Act certification mark infringement (Counterclaim II), Lanham Act false advertising and unfair competition (Counterclaim III), misappropriation of confidential information (Counterclaim IV), trade libel (Counterclaim V), breach of contract (Counterclaim VI), intentional interference with contract, prospective economic advantage, and advantageous business relationships (Counterclaim VIII), common law unfair competition (Counterclaim IX), and trade secret misappropriation (Counterclaim XI) against all Plaintiffs. (D.I. 22, 82, 84). KVAR and Fish assert abuse of process against Gillen (Counterclaim XII). *Id.* KVAR has withdrawn counterclaims VII (good faith and fair dealing), X (deceptive trade practices), and XIII (declaratory judgment). (D.I. 200 at 14, 219). KVAR moved for summary judgment on its breach of contract counterclaim (Counterclaim VI) and intentional interference counterclaim (Counterclaim VIII). (D.I. 191). Plaintiffs moved for summary judgment on all of KVAR's counterclaims. (D.I. 193).

## DISCUSSION

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

3

The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir.1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence ... of a genuine dispute ...." FED.R.CIV.P. 56(c)(1).[2]

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U .S. at 247–49; *see Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

---

[2] There is an extensive record in this case. To the extent a party does not properly oppose factual assertions, the Court considers the factual assertion to be undisputed, and a basis on which to grant summary judgment. FED.R.CIV. P. 56(e)(2) & (3).

4

## B. Decision

*1. KVAR's Motion need not be decided as to Tri-State's Breach of the Implied Covenant of Good Faith and Fair Dealing Claim (Count II); that Count will be dismissed..*

Tri-State alleged that "[a]n implied covenant of good faith and fair dealing exists under the Regional Agreement between Tri-State and KVAR Energy" and that KVAR breached that implied covenant. (D.I. 83, ¶¶ 59-60). The parties agreed to construe and enforce the Regional Agreement "in accordance with the laws of the State of Florida." (D.I. 192 Ex. A, ¶ 24). Florida law permits a claim of the implied covenant of good faith and fair dealing only in tandem with a valid breach of contract claim. *Centurion Air Cargo, Inc. v. UPS Co.*, 420 F.3d 1146, 1151-52 (11th Cir. 2005) ("[A] claim for a breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract."). Where a court has denied a claim of a breach of express contractual terms, Florida law precludes a finding of breach of the implied covenant of good faith and fair dealing. *Id.* The Court struck Tri-State's breach of contract claim and prohibited Tri-State from presenting evidence in its defense to KVAR's breach of contract counterclaim. (D.I. 184).

KVAR argues that because this Court struck Tri-State's breach of contract claim, Tri-State cannot maintain a claim for breach of the implied covenant of good faith and fair dealing under Florida law. (D.I. 192 at 19-20). In opposition, Tri-State asserts a more conservative interpretation of this Court's order, arguing Tri-State can still present evidence of KVAR's alleged breach of contract in support of Tri-State's other claims, including Count II. (D.I. 199 at 2-3). The Court explicitly "str[uck] Count I of the Tri-State parties' revised amended complaint, [and] prohibit[ed] the Tri-State parties from presenting evidence in their defense to Count VI of

5

KVAR's counterclaims." (D.I. 184 at 33). The Court's Order was specific to certain counts; it did not, as KVAR asserts, preclude Tri-State "from even alleging . . . that KVAR breached any express term of the RDA." (D.I. 192 at 20). If the only basis for KVAR's motion was this Court's order, it would not succeed.

Count Two was not properly pled as a separate cause of action. "A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." *Centurion Air Cargo*, 420 F.3d at 1151. Defendants have advanced the argument with support. Plaintiffs have responded with argument but no authority. The Court will dismiss Count II. Thus, the Court need not decide the summary judgment as to Count II.

2. *KVAR's and Fish's Motion is DENIED as to Tri-State's and Chieffo Electric's Trade Libel Claim (Count III).*

Tri-State and Chieffo Electric claim that KVAR and Fish intentionally made and disseminated false and malicious statements about Tri-State and Chieffo Electric with the intent to disparage those parties and their products and services. (D.I. 83, ¶¶ 63-68). The statements at issue are: a) the "Impostor List" posted on KVAR's website that identifies Plaintiffs and their product as entities with which KVAR asserts it is not affiliated and that are manufacturing and /or marketing KVAR's product under another name; and b) oral statements by Fish to distributors about Plaintiffs' business practices, specifically that Gillen and/or Tri-State were overcharging, price gouging, or stealing money from distributors; that they were crooks and thieves; and that their products caused fires. (D.I. 192 at 26, Exh. GGG, Exh. N at 454-464; D.I. 199 at 5).

6

KVAR applies the general elements of defamation, drawn from the context of a false warrant. (D.I. 200 at 10, citing *Adams v. Selhorst*, 779 F.Supp.2d 378 (D. Del. 2011)). Even assuming *Adams* shapes Tri-State's "trade libel" claim,[3] KVAR fails to show there is a genuine issue of material fact.

KVAR and Fish moved for summary judgment on the basis that Plaintiffs cannot show that any statement in the Impostor List is false and defamatory. (D.I. 192 at 27). In response, Plaintiffs assert the Impostor List's claims that KVAR holds a patent on the product, and that some of Plaintiffs' units sold have caused damage and fires, are false. (D.I. 199 at 5). KVAR and Fish reply that even if these statements were false, they do not specifically refer to any one party listed as an "impostor," including Plaintiffs. (D.I. 207 at 4-5). Gillen testified that the Impostor List is false because only KVAR's product, not his own, caught fire; and that the falsity with regard to him and his coplaintiffs is "implied" in the "whole document." *See* (D.I. 192 Exh. N at 464-66, 471-73). The narrative portion of the Impostor List can be reasonably read to refer to each listed "impostor," including Plaintiffs. There remains a genuine issue of material fact as to whether Defendants made false, defamatory statements about any or all of the Plaintiffs in the Impostor List.

KVAR and Fish also request summary judgment on Claim III because Plaintiffs have not shown that the Impostor List or the oral statements caused Tri-State any pecuniary loss or other injury, which KVAR and Fish assert is an element of "trade libel." (D.I. 192 at 26-27). KVAR

---

[3] Both sides have assumed that Delaware law recognizes a claim for "trade libel." Plaintiffs cite New Jersey law, while KVAR cites the elements of defamation generally in the context of a false warrant. (D.I. 193 at 11-12, citing *Mayflower Transit, LLC v. Prince*, 314 F.Supp.2d 362 (D.N.J. 2004); D.I. 200 at 10, citing *Adams v. Selhorst*, 779 F.Supp.2d 378 (D. Del. 2011)).

7

and Fish argue that Gillen testified that he could not point to any economic harm resulting from the alleged defamation. (D.I. 192, Exh. G at 343). Plaintiffs did not respond to this argument. *See* (D.I. 199 at 5).

Assuming injury is required, while Gillen testified that he could not point to any "economic harm resulting from the alleged defamation," he also testified that his reputation was damaged ("[If] somebody Googles me right now, the first thing pops up that I'm impostor and I sell a product that burns down people's homes."); that his name had been "slandered"; and that he and his family had been threatened to the point that his "kid hid[] underneath a table every time somebody knocked on the door." *Id.* at 342-44. KVAR and Fish's argument, focused on the lack of economic harm, does not demonstrate the absence of a genuine issue of material fact with regard to the element of injury, and does not justify summary judgment in their favor on Claim III.

*3. KVAR and Fish's Motion is DENIED as to Plaintiffs' Deceptive Trade Practices Claim (Count IV).*

In Count IV, Plaintiffs allege Defendants made misleading and disparaging statements to take Plaintiffs' customers and goodwill surrounding KVAR's products in violation of the Delaware Deceptive Trade Practices Act, 6 *Del.C.* § 2531 *et seq.* ("DTPA") and that those statements "and other deceptive conduct" damaged Tri-State, "including but not limited to a loss of customers, revenue and goodwill." (D.I. 83 ¶¶ 71-76). The statements at issue are the "Impostor List" and tape-recorded statements by Fish to distributors about Plaintiffs' business practices, calling Gillen a "thief." (D.I. 192 at 27-29).

KVAR and Fish moved for summary judgment on Count IV, arguing: a) calling someone

8

a "thief" is better redressed by a defamation claim, and Tri-State cannot prove the damages required for such a claim; b) as a matter of law, the DTPA cannot redress wrongs between parties in the "vertical" business relationship that existed among Defendants (supplier), Plaintiffs (distributor), and the third party sub-distributors to whom Fish made the comments; and c) Plaintiffs lack standing to bring their DTPA claim because they have not sought injunctive relief. (D.I. 192 at 27-29). Plaintiffs do not separately respond to Defendants' Count IV arguments, instead lumping Count IV together with their Count III arguments that the Impostor List falsely claims that KVAR holds a patent on their product, and that some of Plaintiffs' units sold have caused damage and fires. (D.I. 199 at 5).

KVAR and Fish rightly note that the DTPA cannot redress wrongs between parties in a "vertical" relationship. *See Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 65 (Del. 1993). A "vertical" relationship is one between a customer and a seller, while a "horizontal" relationship is between various business interests. *Id.* Horizontal relationships exist "among sellers and producers." *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 n.13 (Del. 2003). KVAR and Fish argue that the relationship between KVAR, Plaintiffs (as KVAR's distributors), and Tri-State's sub-distributors comprises the "classic 'vertical' relationship which is not covered by the DTPA." (D.I. 192 at 29).

This argument fails to demonstrate an absence of a genuine issue of material fact with regard to the DTPA's application to the relationship among Plaintiffs, Defendants, and the third party distributors. According to the RDA, Tri-State was KVAR's Distributor, with the "exclusive right . . . to purchase, inventory, promote and resell" KVAR's products. (D.I. 192 Exh. A). KVAR conceded at oral argument that KVAR and Plaintiffs competed, at least for an

9

account with Continental Power. (D.I. 221 at 112). A reasonable jury could find KVAR and Tri-State were in a horizontal relationship.

Defendants correctly assert that a party lacks standing to bring a DTPA claim where the harm occurred in the past and the party did not seek an injunction. *See HSMY, Inc. v. Getty Petroleum Marketing, Inc.*, 417 F.Supp.2d 617, 623 (D. Del. 2006). KVAR's and Fish's argument that "the Tri-State Parties have never sought injunctive relief against KVAR" is not supported by the record; in their DTPA claim, Plaintiffs alleged that "Defendants' deceptive conduct is continuing, and will continue to harm Plaintiffs, unless preliminar[il]y and permanently enjoined." (D.I. 83, ¶ 74). Plaintiffs concluded the Revised Amended Complaint by asking this Court to "[p]reliminarily and permanently enjoin[] Defendants . . . from further disparagement of Plaintiffs ... and from further deceptive or misleading conduct, including but not limited to on websites owned, operated, or maintained by Defendants, such as its 'Impostor List' and through any other means by which Plaintiffs [sic] have deceptively or inaccurately misrepresented Plaintiffs." *Id.* p. 18.

Gillen testified that his reputation continues to suffer because of the Impostor List's continued presence online - "[If] somebody Googles me right now, the first thing pops up that I'm an impostor and I sell a product that burns down people's homes." (D.I. 194 Ex. G at 342). The fact that the parties are no longer in a business relationship does not undermine that testimony. On the record here, a reasonable jury could find at least Gillen is subject to ongoing and future harm, and Defendants have not proven that Plaintiffs' request for injunctive relief is moot.

Because Defendants have not shown an absence of a genuine issue of material fact as to

10

whether Plaintiffs (specifically Gillen) were injured by any defamatory statement, Defendants'

motion as to the "thief" statements must be denied even if those statements are analyzed under a

defamation rubric, as Defendants assert is proper. *See Adams v. Selhorst*, 779 F.Supp.2d 378,

395 (D. Del. 2011) (requiring injury under a defamation claim).

4. *KVAR's Motion is GRANTED as to Tri-State's Warranty Declaratory Relief Claim (Count V).*

Tri-State's Count V asks this Court to declare that Defendants must honor express and

implied warranty claims for the KVAR Energy products Plaintiffs sold under the RDA, alleging

Tri-State has demanded KVAR honor such warranty claims and KVAR has refused to do so.

(D.I. 83 ¶¶ 78-81, p. 18). KVAR moved for summary judgment on the basis that Tri-State

waived these warranty claims under the RDA. (D.I. 192 at 30). The RDA contains the following

provision:

> In the event that any of KVAR Products are proved to KVAR satisfaction to
> have been defect[ive] at time of sale to Distributor, KVAR will make an appropriate
> adjustment in the original sales price of such product or, at KVAR's election, replace
> the defective product. KVAR shall provide to Distributor information with respect to
> KVAR's limited warranty extended to the original consumer of Single-Motor Units
> and Panel Units. **KVAR MAKES NO WARRANTY TO DISTRIBUTOR WITH
> RESPECT TO THE PRODUCTS, EITHER EXPRESS OR IMPLIED,
> INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF
> MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**

(D.I. 192 Ex. A ¶ 11) (emphasis in original). The RDA provided this language was to be

construed and enforced in accordance with Florida law. *Id.* ¶ 24.

KVAR contends the emphasized language comprises an express waiver by Tri-State of

any claim that KVAR breached any warranty to Tri-State, and that such a waiver is enforceable

under Florida law. KVAR also argues that Tri-State lacks standing to seek declaratory relief on

11

any warranty claim because Tri-State has not suffered any injury relating to any warranty claim so no actual controversy exists. Tri-State did not respond to KVAR's motion for summary judgment on Count V; specifically, Tri-State has not offered any interpretation of the first sentence of the RDA's warranty provision, nor any record evidence of injury from the breach of any such warranty. (D.I. 199). Taking KVAR's undisputed arguments as true for purposes of its Motion, summary judgment is granted.

*5. Tri-State's Trademark Declaratory Relief Claim (Count VI) is DISMISSED WITH PREJUDICE.*

Tri-State's Count VI asked this Court for declaratory judgment as to the scope and enforceability of KVAR's trademark rights in the term "KVAR." (D.I. 83 ¶¶ 82-87). KVAR had counterclaimed against Tri-State for trademark infringement. (D.I. 22, ¶¶ 80-93). KVAR moved for summary judgment on Tri-State's Count VI. (D.I. 192 at 32-33). Tri-State did not respond to KVAR's motion on Count VI, and at oral argument conceded that the claim was brought as a form of defense against KVAR's trademark infringement claim (on which KVAR is granted summary judgment in any case, *see infra*) and that the claim could be dismissed. (D.I. 199, D.I. 221 at 60-61). Count VI is hereby dismissed with prejudice.

*6. Fish's Motion is GRANTED as to Gillen's Intentional Infliction of Emotional Distress Claim (Count VII).*

In Count VII, Gillen claims Fish intentionally inflicted emotional distress upon Gillen by threatening him via voice mail. (D.I. 83 ¶¶ 48-51, 88-92). Fish moved for summary judgment on Count VII, asserting that even assuming he had left threatening voicemail messages for Gillen, Gillen's claim was barred by the statute of limitations; the messages did not comprise the "extreme conduct" necessary to support an intentional infliction of emotional distress claim; and

12

the messages did not cause Gillen the requisite level of distress. (D.I. 192 at 34-36). In response, Gillen argued only that the voicemails were sufficiently outrageous to sustain his claim. (D.I. 199 at 5-6).

Under Delaware law, to establish a claim for intentional infliction of emotional distress, the plaintiff must prove "(1) extreme and outrageous conduct; (2) an intent to cause severe emotional distress or reckless disregard with respect to causing emotional distress; and, (3) the conduct actually caused severe emotional distress." *Jordan v. Delaware*, 433 F.Supp.2d 433, 444 (D.Del. 2006). A two-year limitations period applies to claims for emotional distress. *E.E.O.C. v. Avecia Inc.*, 2003 WL 22432911, *2 (D. Del. Oct. 23, 2003) (applying 10 *Del.C.* § 8119).

It is undisputed that Count VII is based on Fish's phone calls in the summer and November of 2007. (D.I. 192 Ex. N at 477:11-478:12; D.I. 221 at 58). Plaintiffs first alleged this conduct, and claimed it comprised intentional infliction of emotional distress, in their March 29, 2010, Amended Complaint - over two years after the conduct allegedly occurred. (*See* D.I. 80, ¶¶ 48-53, 103-07). The allegations and claim were first made over two years after the conduct, beyond the statute of limitations. *See* 10 *Del.C.* § 8119.

Gillen has not shown that the statute of limitations was tolled in any way, or that the Amended Complaint relates back to any earlier pleading under FED. R. CIV. P. 15(c). Plaintiffs' original complaint from the Court of Chancery, verified on November 16, 2007, filed on November 19, 2007, and removed to this Court in April 2008, does not allege Fish's alleged conduct underlying Count VII, and thus it does not appear the claims could relate back under Rule 15(c) as the conduct, transaction, or occurrence was not set out in the original pleadings.

13

(D.I. 1 Ex. A). Fish was not added as a party until he brought his own counterclaims in April

2009. (D.I. 22). Fish has shown the absence of a genuine issue of material fact in dispute with

regard to the statute of limitations on Count VII. The Court need not reach Fish's other

arguments.

*7. Plaintiffs' Motion is GRANTED as to Trademark Infringement (Counterclaim I), but
DENIED as to Certification Mark Infringement (Counterclaim II) and False Advertising and
Unfair Competition (Counterclaim III).*

Counterclaim I asserts Plaintiffs' sale of KVAR products under a different name,

"Kilowatt Nanny," without KVAR's authorization created confusion as to the affiliation,

connection, or association of Plaintiffs with KVAR. (D.I. 22, ¶¶ 80-93). It also asserts Plaintiffs

used marks on their own products that were identical and/or confusingly similar to the KVAR

mark. Counterclaim II asserts that KVAR obtained Underwriters Laboratories (UL) and CSA

certifications on its product, and that Plaintiffs improperly used KVAR's UL and CSA

certifications on the Kilowatt Nanny products. (*Id.* ¶¶ 94-109). Counterclaim III alleges

generally that the Kilowatt Nanny, UL, and CSA allegations comprise false advertising and

unfair competition under the Lanham Act. (*Id.* ¶¶ 110-14).

Plaintiffs argue that KVAR authorized Plaintiffs to sell KVAR products under the

Kilowatt Nanny name. (D.I. 193 at 8, 10). Taylor testified he told Gillen to rename his product

as "Kilowatt Nanny" to deflect some of the calls for KVAR products. (D.I. 193-19 at 197).

While KVAR argues in opposition that Tri-State used Kilowatt Nanny "without KVAR's

knowledge or advance approval," Gillen's deposition testimony that KVAR attached also

indicates KVAR told Tri-State to change the name to deflect phone calls to Tri-State, who would

bundle the KVAR unit with other energy-saving devices and services and sell the bundle as the

14

"Kilowatt Nanny." (D.I. 200 at 7; Ex. 7, 35:8-39:24). This record is undisputed: KVAR told Tri-State to change the name, causing KVAR's claim that Tri-State did so without KVAR's authorization to fail. KVAR's unsupported argument to the contrary does not rescue KVAR's claims. Summary judgment for Plaintiffs is granted on Counterclaim I.

Plaintiffs do not meet their burden on Counterclaims II and III; there is insufficient evidence for the Court to conclude that KVAR's permission to rename the product encompassed permission to use KVAR's certifications on those products. Plaintiffs' motion is denied on Counterclaims II and III.

*10. Plaintiffs' Motion is GRANTED as to KVAR's Misappropriation of Confidential Information Claim (Counterclaim IV).*

The parties agreed to a nondisclosure agreement (NDA) before entering into the Distributor Agreement that governed "KVAR Confidential Information." (D.I. 22 ¶ 38; D.I. 200, Exh. 11, 12). KVAR claims Plaintiffs disclosed and/or used KVAR Confidential Information in competition with KVAR. (D.I. 22, ¶¶ 115-20).

Plaintiffs seek summary judgment on the bases that KVAR has not shown damages or identified what information was misappropriated. (D.I. 193 at 10). In order to withstand summary judgment, KVAR must specifically identify the information appropriated. *See Rimmax Wheels LLC v. RC Components, Inc.*, 477 F.Supp.2d 670, 675 (D. Del. 2007). It is undisputed that Joe Chieffo shared KVAR's "theories . . . on marketing and sales" with Ed Kimmel, head of a company called PowerwoRx that manufactures an energy savings device, at an "introductory meeting." Chieffo also showed Kimmel KVAR's "patented piece of equipment called a sizer" that was "the primary piece of equipment that they used to install KVAR product," and explained

15

how it was utilized to sell and install KVAR units. (D.I. 193-19, Ex. I, p. 395-99; D.I. 200, Ex. 10 at 70:15-72:6).

Plaintiffs argue that when Gregory Taylor (head of KVAR and signatory to the NDA) was asked about this conversation between Chieffo and Kimmel, Taylor said he did not intend for the NDA to cover that sort of information because Kimmel did not compete with KVAR. (D.I. 193-19 and 193-20, pp. 398-402). In response, KVAR points to other testimony by Taylor that the NDA was to protect the types of information spelled out in the NDA. (D.I. 200, Ex. 13, at 390-93). Regardless of the NDA's scope, which very well may be a disputed issue, KVAR must specifically identify the appropriated information. *See Rimmax*, 477 F.Supp.2d at 675. KVAR has failed to sufficiently identify that information; marketing and sales "theories," and explaining a patented piece of equipment, are not sufficiently specific, nor has KVAR asserted that they are sufficiently proprietary. KVAR does not address Plaintiffs' argument that they have not shown damages. (D.I. 200 at 8-10). Plaintiffs' Motion is granted.

11. *Plaintiffs' Motion is DENIED as to KVAR's Trade Libel Claim (Counterclaim V).*

KVAR claims that Plaintiffs' circulation of their first Delaware complaint to potential KVAR customers, and other statements to those potential customers, comprises common law trade libel. Plaintiffs cite New Jersey law and argue generally that KVAR has "fail[ed] to identify even one statement or claim that are false and willfully, maliciously made," and failed to prove special damages. (D.I. 193 at 11-12, citing *Mayflower Transit, LLC v. Prince*, 314 F.Supp.2d 362 (D.N.J. 2004)). Plaintiffs have failed to show the absence of a genuine disputed

16

material fact relative to KVAR's asserted Delaware "trade libel" claim.[4] Plaintiffs' motion is denied.

   12. *Plaintiffs' Motion and KVAR's Motion are DENIED as to KVAR's Breach of Contract Claim (Counterclaim VI).*

   As a threshold matter, Plaintiffs' attempt to defend against and move for summary judgment on KVAR's breach of contract counterclaim (D.I. 193 at 12-13, D.I. 199 at 3-4) violates the Order prohibiting presentation of a defense to that counterclaim. (D.I. 184). The Court found that key discoverable documents may have been destroyed by Plaintiffs, and that Plaintiffs had previously ignored Court Orders compelling discovery responses and payment of sanctions, concluding that Plaintiffs had "refused to cooperate in discovery and their conduct evince[d] a contempt for this Court's Orders and rules, a sorry record that demand[ed] a punishment which will deter them and others from such behavior in the future" and that had prejudiced KVAR. (D.I. 184 at 31-33). The Court "str[uck] Count I of the Tri-State parties' revised amended complaint, prohibit[ed] the Tri-State parties from presenting evidence in their defense to Count VI of KVAR's counterclaims, and order[ed] the Tri-State parties to pay KVAR's fees and costs associated with responding to the Tri-State parties'" dispositive motions and most recent round of discovery motions.

   The Court therefore denies Plaintiffs' motion for summary judgment on KVAR's

---

   [4] Neither party has convinced the Court that Delaware recognizes a "trade libel" claim. *See* footnote 3, *supra*.

   Further, upon review of KVAR's cited record, it appears the only statement Plaintiffs agreed was inaccurate in the original complaint was about the dates when Tri-State agreed to become a regional distributor for KVAR. (D.I. 200, Ex. 14, 729-730). These factual inaccuracies alone do not appear to be defamatory. Nor does it appear that the fact that Tri-State amended their factual pleadings as the case progressed makes those statements defamatory.

17

Counterclaim VI, and will not consider their arguments opposing KVAR's motion on that claim. The Court has reviewed KVAR's motion for summary judgment on its breach of contract counterclaim to see if KVAR has shown the absence of a genuinely disputed material fact relative to the claims in question. *See Celotex*, 477 U.S. at 330.

The RDA provides it should be construed under Florida law. (D.I. 192 Ex. A, ¶ 24). In Florida, "[t]he elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." *Schiffman v. Schiffman*, 47 So.3d 925, 926 (Fla. Dist. Ct. App. 2010). KVAR alleged the RDA was a valid contract, and the notarized contract dated May, 2006 appears to be valid and enforceable. (D.I. 192 at 21; *id.* Ex. A; *id.* Ex. C).

As for the second element, KVAR argues on summary judgment that Tri-State breached the contract in three ways: by failing to meet the contract's minimum quarterly sales requirements, by violating the covenant not to compete, and by failing to get KVAR's approval for advertising. (D.I. 192 at 21-25). "KVAR recognizes that the direct damages it can prove resulting from these breaches [are] nominal. Indeed, the only calculable damages that . . . can be linked to these breaches are the lost profits that KVAR would have enjoyed but for Tri-State's breach of its covenant not to compete." (D.I. 192 at 25). As damages, KVAR seeks profits on competing units Tri-State sold before the termination of the RDA. (D.I. 221 at 99). KVAR does not seek any damages because of the termination. *Id.*

KVAR indicates there is a dispute as to when the RDA was terminated, with the parties arguing for September 7, 2007 (Plaintiffs) and November 15, 2007 (Defendants). (D.I. 192 at 23). KVAR's measure of damages for the asserted breach of the non-compete comprises "at least 30 sales of . . . competing products as a result of actions [Tri-State] took while still under

18

contract with KVAR." (D.I. 192 at 25, citing Exs. Y, BB). The sales evidenced in the cited

record are all dated October 2007 or later (except for one sale which is not dated). (*Id.* Exs. Y,

BB). The dispute over the termination date therefore puts all of the sales comprising KVAR's

asserted damages in dispute; it is possible that all the sales comprising KVAR's asserted

damages occurred after termination. In other words, there is a dispute of material fact as to

whether Tri-State's alleged breach of the non-compete clause damaged KVAR, which is an

essential element of KVAR's breach of contract claim. *See Schiffman*, 47 So.3d at 926. Further,

because KVAR agrees it has not suffered any damages from Tri-State's other asserted breaches

(failure to meet the RDA's minimums and failure to get approval for advertising), those actions

cannot underlie KVAR's breach of contract claim. KVAR's Motion is denied.

13. *Plaintiffs' Motion is DENIED as to KVAR's Claims of Intentional Interference with Contract, Prospective Economic Advantage and Advantageous Business Relationships (Counterclaim VIII) and GRANTED as to Common Law Unfair Competition (Counterclaim IX); KVAR's Motion as to Counterclaim VIII is DENIED.*

KVAR's eighth and ninth counterclaims rely on their allegations that Plaintiffs disrupted

a business relationship between KVAR and EcoQuest. (D.I. 22, ¶¶ 135-49). "To state a claim for

unfair competition, a plaintiff must allege a reasonable expectancy of entering a valid business

relationship, with which the defendant wrongfully interferes, and thereby defeats the plaintiff's

legitimate expectancy and causes him harm. Similarly, to state a claim for tortious interference

with a prospective business opportunity, a plaintiff must allege: 1) the reasonable probability of a

business opportunity; 2) the intentional interference by defendant with that opportunity; 3)

proximate causation; and 4) damages." *Agilent Techs., Inc. v. Kirkland*, 2009 WL 119865, *5

(Del. Ch. Jan. 20, 2009) (internal citations and quotation omitted).

19

It is undisputed that KVAR and EcoQuest had a valid business relationship that Tri-State knew about, and that Tri-State distributed information about Tri-State's litigation with KVAR and an alleged safety recall of KVAR's products to kill EcoQuest's deal with KVAR.[5] (D.I. 221 at 71-72; D.I. 192 at 41-42). It is also undisputed that the relationship between KVAR and EcoQuest fell apart after EcoQuest received the information Tri-State distributed.

Plaintiffs moved for summary judgment on Counterclaims VIII and IX, asserting in two sentences without citing any evidence that KVAR, rather than EcoQuest, terminated the relationship. (D.I. 193 at 13, 14). This argument falls far short of Plaintiffs' burden for Counterclaim VIII.

Plaintiffs also assert that KVAR has not proven damages for Counterclaim IX, unfair competition. In response, KVAR proffers an alternative standard that does not require damages "due to the amorphous nature of the tort." (D.I. 200 at 15, citing *State ex rel Brady v. Wellington Homes, Inc.*, 2003 WL 22048231, *2 (Del. Super. 2003)). In fact, the tort clearly requires harm. *See Agilent*, 2009 WL 119865 at *5. Plaintiffs have pointed out a lack of evidence of that harm, and KVAR failed to show a genuine issue of material fact with regard to it in response to Plaintiffs' motion.[6] Plaintiff's motion is granted as to Counterclaim IX.

KVAR moved for summary judgment on Counterclaim VIII, arguing that as to the only

---

[5] Whether the complaint contains false statements may also be a material issue of fact – *see* Section II, *supra*. It appears to be undisputed that the circulated information about the potential safety recall was false. (D.I. 192 at 42-43; D.I. 193 at 13-14).

[6] The Court notes that KVAR asserted lost sales of 20,000 units at $100 apiece in its own motion for summary judgment on Counterclaim VIII, but did not raise this argument in response to Plaintiff's motion that KVAR suffered no damages from Counterclaim IX. The Court is not required to hunt through the record on KVAR's behalf. *See Davis v. Correctional Med. Serv's*, 760 F.Supp.2d 469, 472 n.4 (D. Del. 2011).

disputed element - proximate causation - Michael Jackson of EcoQuest "put a stop to its negotiations" with KVAR because of the information Tri-State circulated. (D.I. 192 at 43-44). Reviewing the correspondence between Jackson and Fish, and Jackson's testimony, in the light most favorable to Plaintiffs, there appears to be a genuine issue of material fact as to whether Jackson of EcoQuest, or Fish of KVAR, terminated the relationship; in other words, whether Jackson terminated the relationship, or Jackson put the deal "on hold" and Fish terminated it. (D.I. 221 at 62-66; D.I. 192, Ex. JJ at 103-107; *id.* Ex. LL). The Court particularly notes the following testimony by Jackson:

Q. And you called the deal off; correct?
A. No.
Q. You put it on stop.
A. I put it on hold.

(D.I. 192, Ex. JJ at 103). Because there is a genuine issue of material fact with regard to proximate causation, KVAR's Motion is denied. *See Agilent*, 2009 WL 119865 at *5.

14. *Plaintiffs' Motion is DENIED as to KVAR's Trade Secrets Claim (Counterclaim XI).*

Plaintiffs state the elements of a trade secret claim but do not set forth any basis for summary judgment or cite any record evidence. (D.I. 193 at 13-14). While it seems unlikely that KVAR can prove that the information Chieffo shared with Kimmel was a trade secret, as it argues (*see* Section 10, *supra*), Plaintiffs have not shown the absence of any material fact and summary judgment is denied.

15. *Plaintiffs' Motion is DENIED as to KVAR's Abuse of Process Claim (Counterclaim XII).*

KVAR alleges that before a January 26, 2009 mediation teleconference with Judge Stark, the parties were very close to settlement and KVAR recommended finishing the settlement

negotiations, whereas Plaintiffs insisted on going forward with the mediation, with a KVAR principal to appear in person. (D.I. 22, ¶¶ 65-79, 174-81). Gillen had sworn out a citizen's warrant for Fish's arrest based on alleged telephonic threats Fish made against Gillen. *Id.* At the lunch break of the mediation conference, courthouse marshals arrested Fish. *Id.* KVAR asserts that these actions comprise an abuse of process, motivated to give Gillen an advantage in this litigation.

On summary judgment, Plaintiffs argue that "KVAR has not averred a [coercive] act." (D.I. 193 at 15). Plaintiffs also point out this Court's March 29, 2010, opinion denying Fish's motion for fees stemming from the mediation and stating that Fish's "theory – even if we take [his] version of the facts as true – is preposterous." (D.I. 79 at 3). In opposition, KVAR cites testimony by Edward Kimmel in which KVAR asserts "Gillen himself admitted to Kimmel that his 'sole purpose' in insisting that Fish attend the parties' April 2, 2009 mediation was to 'throw [Fish] in jail.'" (D.I. 200 at 19; *see* D.I. 221 at 102-03). KVAR failed to attach the cited pages to their exhibit. *(See* D.I. 200, Ex. 10). But, taking KVAR's citation as true in light of Plaintiffs' Motion, KVAR has raised a genuine issue of material fact as to whether Gillen had an ulterior improper purpose and committed a willful act (the mediation) improperly used in the regular conduct of proceedings. *See STMicroelectronics N.V. v. Agere Sys., Inc.*, 2009 WL 1444405, *4 (Del. Super. May 19, 2009). Plaintiffs' Motion is denied.

An appropriate order will be entered.

22